**UNITED STATES of America,**

v.

**Ivan Lowell DECKARD, a/k/a "Joseph Francis Vale," Defendant.**

**Criminal No. 4:95cr00045.**

United States District Court,
E.D. Virginia,
Newport News Division.

Feb. 9, 1996.

---

Robert J. Seidel, Jr., Assistant United States Attorney, Norfolk, Virginia, for USA.

Deborah S. Roe, Hampton, VA, for Defendant.

### MEMORANDUM OPINION

REBECCA BEACH SMITH, District Judge.

On October 30, 1995, Defendant Ivan Lowell Deckard pled guilty to Bank Fraud in violation of 18 U.S.C. § 1344, Possession of Counterfeit Keys in violation of 18 U.S.C. § 1704, and Theft of Mail in violation of 18 U.S.C. § 1708. Defendant came before the Court on January 25, 1996, for sentencing. The Court sentenced Defendant to 240 months imprisonment.[1]

Under the Sentencing Guidelines, the offense level for the crimes to which Defendant pled guilty is nine. *See* United States Sentencing Commission, *Guidelines Manual* ("USSG"), § 2F1.1 (Nov.1994). Considering only those crimes and sentences which were imposed within the last fifteen years, Defendant has fifteen criminal history points, which place him in Criminal History Category VI. *See* USSG § 4A1.2(a), (e). With an offense level of nine and a Criminal History Category VI, Defendant's guideline range is 21–27 months imprisonment. USSG § 5A.

After reviewing the uncontested findings contained in Defendant's presentence investigation report and hearing the testimony and arguments offered by both the Government and Defendant during the sentencing, the Court exercised its discretion under USSG § 4A1.3 to depart upward from the guideline range.[2]

Section 4A1.3 authorizes a district court to depart from the guideline range and impose a greater term of imprisonment if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." The guidelines specifically address the situation in this case,

---

1. Specifically, the Court sentenced Defendant to 240 months on Count 1, 120 months on Count 3, and 60 months on Count 5. In addition, the Court imposed a five-year term of supervised release on Count 1, three years of supervised release on Count 3, and three years of supervised release on Count 5. The sentences for Counts 3 and 5 are to run concurrently with the sentence imposed on Count 1. The Court also ordered Defendant to pay: (1) a special assessment of $150 (court costs); (2) restitution of $13,454.00; (3) the fees of his court-appointed attorney; (4) a $500,000 fine; and (5) the costs of prosecution, incarceration, and supervised release.

2. Defendant received notice of a possible upward departure prior to imposition of his sentence. *See Burns v. United States*, 501 U.S. 129, 135–39,

111 S.Ct. 2182, 2185–88, 115 L.Ed.2d 123 (1991) (holding that parties must receive reasonable notice of a possible upward departure by district court). The presentence investigation report indicated that Defendant's prior criminal history might warrant an upward departure under the guidelines. Presentence Investigation Report at 33, Part E, ¶ 122. The Court also notified Defendant of its consideration of an upward departure prior to argument and offered to continue the sentencing hearing to allow Defendant additional time in which to respond and structure an argument. After consulting with her client, Defendant's attorney informed the Court that Defendant did not wish a continuance and wanted to be sentenced that day.

where an upward departure is considered for a defendant with a Criminal History Category VI. The guidelines state:

> The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a departure above the guideline range for a defendant with Criminal History Category VI may be warranted. In determining whether an upward departure from Criminal History Category VI is warranted, the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record.

USSG § 4A1.3.

Defendant is the perfect candidate for an upward departure. His criminal activity has spanned nearly a half century. In 1948, he was sentenced in a General Court Martial on a conviction of unauthorized leave. In 1949, he was again sentenced on a conviction of unauthorized leave. In 1957, Defendant was sentenced on a conviction of arson, second degree arson, and two counts of issuing a fraudulent check. Defendant escaped from prison after serving just over a year of the sentence imposed for his 1957 crimes. In 1959, Defendant was sentenced on a conviction of interstate transportation of forged securities and two counts of first degree robbery by means of a dangerous and deadly weapon. In 1960, he was sentenced on a conviction of first degree robbery by means of a dangerous and deadly weapon and two counts of assault with intent to kill. In 1961, Defendant was sentenced on a conviction of interstate transportation of forged securities, escape from custody of a United States Marshal, and possession of an unregistered submachine gun.

In 1969, Defendant was sentenced on a conviction of armed robbery. In 1974, he was sentenced on a conviction of armed robbery and unlawful use of a weapon. In 1977, he was sentenced on a conviction of possession of a firearm without the requisite owner's identification card. In 1979, Defendant was sentenced on a conviction of burglary of a post office. In 1980, he was sentenced on a conviction of possession of more than five grams of cannabis and possession of burglary tools. In 1981, he was sentenced to a total of fifty-five years incarceration on a conviction of two counts of conspiracy, manufacture of a counterfeit postal lock key, obstruction of correspondence, interstate transportation of forged securities, three counts of possession of a counterfeit postal key, possession of stolen mail, and interstate transportation of stolen property.

After serving fifteen years of the fifty-five-year sentence imposed in 1981, Defendant was released on parole. Less than six months after he was released from prison, Defendant committed the crimes for which this Court is charged with imposing a sentence.[3] Defendant has committed crimes across the country and inflicted incalculable harm on the people and government of the United States. He has used fraud, deception, and violence to take what he has wanted throughout his entire life. Defendant is a professional "con" man, a dangerous criminal incapable of following the law. There is no doubt that, whenever Defendant is released from prison, he will again victimize society.

When calculating Defendant's criminal history category, only those crimes for which Defendant was convicted within the last fifteen years were included. See USSG § 4A1.2(e). Due to his lengthy 1981 sentence for which he was on parole when he committed the instant offenses, the majority of Defendant's criminal behavior occurred more than fifteen years ago, *including many crimes similar to the instant offenses, and many serious crimes involving violence.* If these "older" crimes were included in the calculations, Defendant would have 44 criminal history points, rather than 15.[4] The

---

**3.** Defendant's criminal history clearly shows that after each release from incarceration, shortly thereafter Defendant again becomes involved in criminal activities, often similar to those for which he was just incarcerated and released.

**4.** At the sentencing hearing, the Court stated that Defendant would have 36 criminal history points, if his "older" (pre-1979) offenses were included in the calculations. In arriving at this figure, however, the Court only included Defendant's

Court finds that the sentence range imposed by the guidelines on Defendant for a Criminal History Category VI does not adequately reflect the egregious nature of Defendant's criminal past nor the likelihood that he will commit crimes in the future, if presented with the opportunity to do so. Accordingly, the Court elects to depart upward from the guideline range, pursuant to USSG § 4A1.3.

■ Once a district court decides that an upward departure is warranted under section 4A1.3, it is presented with two options: (1) determine the extent of an upward departure by moving to successively higher categories in the sentencing table, or by formulating additional criminal history categories above Category VI, upon a finding that the prior category does not provide an adequate sentence, in accordance with *United States v. Cash,* 983 F.2d 558, 561–62 (4th Cir.1992), *cert. denied,* 508 U.S. 924, 113 S.Ct. 2380, 124 L.Ed.2d 284 (1993) (citing *United States v. Rusher,* 966 F.2d 868, 884 (4th Cir.), *cert. denied,* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992)); or (2) if the court determines that "the defendants' prior criminal conduct is of sufficient seriousness to conclude that he should be treated as a career offender, the district court may depart directly to the guideline range applicable to career offenders similar to the defendant." *Cash,* 983 F.2d at 562; *see United States v. Harrison,* 58 F.3d 115, 117–19 (4th Cir.1995) (reiterating these two options established in *Cash*).[5]

■ Given Defendant's lengthy history of serious criminal activity, failure to depart upward from the guideline range of 21–27 months imprisonment would constitute an abuse of discretion. The Court, therefore, determines whether to engage in a level-by-level enhancement or to sentence Defendant as a *de facto* career offender. It is unnecessary to go through the level-by-level analysis outlined in *Rusher,* and reiterated in *Cash* and *Harrison,* in order to arrive at an appropriate sentence for Defendant. The Court finds that the facts of this case warrant application of the career offender approach established in *Cash.* Defendant's criminal behavior is of such a magnitude and of such a serious nature that justice demands he be treated as a career offender. Reliable, uncontested information in the presentence investigation report demonstrates that Defendant's past is riddled with violent crimes and crimes of fraud which qualify him for this status. Furthermore, Defendant admits to committing these crimes, and does not argue the constitutionality of his convictions. Therefore, no analysis of the predicate convictions for constitutional infirmity under the standard established in *United States v. Jones,* 907 F.2d 456, 469 (4th Cir.1990), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991) (*Jones I* ), is warranted.[6]

Accordingly, the Court finds that Defendant is a *de facto* career offender who must be punished in accordance with the guideline

pre-1979 convictions for violent crimes. If all of Defendant's pre-1979 convictions are included, he has 44 criminal history points. The sentence ultimately imposed by the Court, which is based on Defendant's status as a *de facto* career offender, does not depend upon whether all of Defendant's "older" convictions or only his "older" convictions for violent crimes are included in the criminal history calculations. *See infra* 125–126 and note 7.

5. In *Cash,* the Fourth Circuit specifically addressed "how a court should proceed when it deems inadequate the highest Criminal History Category, Category VI, or finds that the defendant's prior criminal history conduct would dictate that he be sentenced as a career offender...." 983 F.2d at 561. Both scenarios addressed by the court in *Cash* exist in this Defendant's case.

6. No issue under *Jones I* is present in this Defendant's case. *Jones I* requires the court to give a defendant an opportunity to present evidence on constitutionally challenged prior state convictions for purposes of criminal history points or career offender status. 907 F.2d at 469. However, even if a defendant successfully challenges the constitutionality of a prior state conviction, "the court may nonetheless consider making an upward departure under § 4A1.3 if it finds that the defendants' prior convictions provide reliable evidence of past criminal activity." *Id.* at 470. Moreover, the court in *Cash* reiterated this conclusion and held that the district court may depart directly to the career offender guideline range, if "based on reliable information [it] determines that a defendant's underlying past criminal conduct demonstrates that the defendant would be sentenced as a career offender but for" a successful *Jones I* challenge. 983 F.2d at 562–63.

range for *de jure* career offenders similar to Defendant. Defendant's guideline range as a *de facto* career offender is 210–262 months. *See* USSG §§ 4B1.1, 5A.[7] At the sentencing hearing, the Court sentenced Defendant within that range to a term of 240 months. This sentence is appropriate given Defendant's egregious criminal past and all indications that he will never be capable of living a crime-free life.

It is so ORDERED.

---

7. When determining a defendant's guideline range as a career offender under USSG § 4B1.1, the defendant's base offense level is dependant upon the maximum sentence allowable for his crimes by statute. After that base offense level is determined and any adjustments are figured, the defendant's guideline range is determined by using the sentencing chart at USSG § 5A.

In this case, Defendant's base offense level as a *de facto* career offender is 34, because the maximum punishment for his crimes is thirty years. *See* USSG § 4B1.1. He received a two-point reduction for acceptance of responsibility, so his total offense level is 32. With a Criminal History Category VI, his guideline range is 210–262 months. *See* USSG § 5A. A defendant is in Criminal History Category VI if he has thirteen or more criminal history points. In this case, therefore, whether Defendant had 15, 36, or 44 criminal history points is irrelevant to his guideline range as a *de facto* career offender.