UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                          No. 00-4822

RICHIE DALE LOCKLEAR,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CR-00-21)

Argued: September 26, 2002

Decided: December 17, 2002

Before NIEMEYER, LUTTIG, and MICHAEL, Circuit Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion, in which Judge Luttig and Judge Michael joined.

## COUNSEL

**ARGUED:** Christopher G. Browning, Jr., John David Burns, HUNTON & WILLIAMS, Raleigh, North Carolina, for Appellant. Felice McConnell Corpening, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

NIEMEYER, Circuit Judge:

Richie Dale Locklear pleaded guilty to two counts charging him with possessing and passing counterfeit money, in violation of 18 U.S.C. §§ 472 and 2. The district court sentenced him to 57 months' imprisonment. On appeal, Locklear contends that the district court erred by (1) departing upward two levels from the otherwise applicable Sentencing Guideline level based on his criminal history; (2) failing to proceed level-by-level in its upward departure; (3) enhancing his offense level for his use of a minor to commit the offense; and (4) failing to verify that he and his counsel had an opportunity to review the presentence report before sentencing. Finding no reversible error, we affirm.

I

Locklear and eight others, including two minors, ages 15 and 16, used a scanner, computer, and printer to manufacture counterfeit bills and then used the bills to make purchases at various locations in North and South Carolina. Locklear involved the minors in cutting out the bills after they were printed and crumpling them to make them look worn. He also traveled with one minor when he used the counterfeit currency to purchase cocaine and drinks, to attempt to play video poker, and to make purchases at various stores.

After Locklear pleaded guilty without a plea agreement, he was sentenced to 57 months' imprisonment. In sentencing Locklear, the district court included a two-level enhancement for Locklear's use of a minor and a two-level enhancement because the applicable Criminal History Category VI did not adequately reflect the seriousness of his criminal history.

On appeal, Locklear challenges several aspects of his sentencing. Because none of his assignments of error were presented to the dis-

trict court, we review his claims under the well-known plain error analysis of Federal Rule of Criminal Procedure 52(b). *See United States v. Olano*, 507 U.S. 725, 731-35 (1993).

II

A

Locklear first contends that the district court erred in departing upwardly two levels because Criminal History Category VI, which was applicable, did not adequately reflect Locklear's criminal history. Locklear argues that in departing, the district court erred because it failed to articulate reasons to justify the departure.

Section 4A1.3 of the Sentencing Guidelines authorizes a sentencing court to depart upwardly if the defendant's criminal history is not adequately represented by the criminal history category. U.S.S.G. § 4A1.3, p.s. If the court determines to depart upwardly, however, it must consider "not only the number of prior offenses committed by a defendant but also their seriousness," *United States v. Cash*, 983 F.2d 558, 560-61 (4th Cir. 1992), and it must provide "'a short clear written statement or a reasoned statement from the bench' to support its departure," *United States v. Rusher*, 966 F.2d 868, 882 (4th Cir. 1992) (internal citations omitted).

In this case, Locklear was sentenced at a Criminal History Category VI which is called for when a defendant has 13 or more criminal history points. Locklear had 30 criminal history points, and at the time he committed the instant offenses, he faced pending charges for drug paraphernalia possession, assault, and communicating threats. At sentencing, Locklear did not contest the criminal history set out in the presentence report. Rather, he observed that this history was the product of a deprived childhood and a drug habit.

In announcing its decision to depart upwardly because Criminal History Category VI inadequately reflected the seriousness of Locklear's criminal history, the district court explained:

> I have looked at his criminal history and it is pretty substantial. There's one, two — three cases of breaking and

entering and there's larceny and there's possession of marijuana and there's injury to personal property and assault on a government official and, then, a second assault on a government official and resisting arrest and simple assault and, then, there's driving while license revoked and an unauthorized use of a motor vehicle and there's larceny, driving while license revoked and there's resisting a public officer and larceny from the government and there's further larceny and I don't think that his criminal history category is adequately represented, Mr. Edwards.

Rather than selecting a sentence that it thought appropriate and working backwards to rationalize the sentence, as prohibited by *Rusher*, 966 F.2d at 883, the district court determined that Category VI "understated" Locklear's criminal history, and because Category VI was the maximum, "the proper way to make the adjustment upwardly would [be to] increase the offense level to 16," a two-level enhancement. The court then sentenced Locklear within the corresponding 46-57 month guideline range, sentencing him to 57 months' imprisonment. The effect of the district court's departure was to increase Locklear's sentence by 11 months based on the fact that a criminal history category VI did not adequately represent the seriousness of Locklear's criminal history.

If the court had extrapolated from the Sentencing Table and applied successively higher criminal history categories, a posited Category VIII would exist for roughly 21-24 criminal history points — a modest increase in view of the fact that Locklear had 30 points — and would produce a sentencing range of roughly 46-57 months at his offense level of 14. Because Category VIII does not exist, a corresponding — and equally modest — sentencing range is produced by moving down the Table from level 14 to level 16, which imposes a sentencing range of 46-57 months.

We find no error in the district court's decision to depart upwardly two levels — from 14 to 16 — in these circumstances, and we find that the court's reasons were adequately stated.

## B

Locklear also argues that in departing upward, from a level 14 to a level 16, the district court failed to consider the interim level 15, as

required by *Rusher* and *Cash*. *See Rusher*, 966 F.2d at 884-85; *Cash*, 983 F.2d at 560-62 ("Although this language [in *Rusher*] is dicta . . ., we believe that it identifies the proper approach to be taken"). The policy statement under § 4A1.3 of the Sentencing Guidelines provides that when a court departs upwardly from Category VI, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." This incremental approach reflects the interest of the Sentencing Commission in narrowing judicial discretion while, at the same time, permitting adjustments "'to reflect the unique characteristics of each case.'" *Rusher*, 966 F.2d at 884-85 (internal citations omitted).

In this case, the court found that Category VI inadequately represented the seriousness of Locklear's criminal history, and because there were no categories higher than Category VI, the court moved down the table raising Locklear's offense level from 14 to 16 to produce the equivalent of a higher criminal history category. We find no reversible error in this court's method of proceeding. If it was error for the court to have failed to state explicitly that level 15 was inadequate, we nevertheless find any such error harmless. Given Locklear's extensive and serious criminal history, the failure to explain to Locklear why level 15 as opposed to level 16 was not appropriate did not affect his substantial rights, particularly when a level higher than 16 could have been justified.

C

Locklear also challenges the district court's enhancement of his offense level for use of a minor in committing the offense, arguing that the record does not factually support the conclusion.

Section 3B1.4 of the Sentencing Guidelines imposes a two-level enhancement if the defendant "used or attempted to use a person less than 18 years of age to commit the offense." U.S.S.G. § 3B1.4. An application note to this provision defines "use" to "include[] directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." *Id.* at § 3B1.4, cmt. n.1.

In this case, Locklear engaged minors to cut out the counterfeit money from printed sheets and to crumple up the money to make it

look old. He also procured their attendance during his traveling to use and pass the counterfeit money for the purchase of various items. We conclude that the district court did not err in applying this enhancement.

## D

Finally, Locklear contends that the record fails to show that the district court verified that he and his counsel read and discussed the presentence report before the court imposed sentence. *See* Fed. R. Crim. P. 32(c)(3)(A).

A sentencing court "need not expressly ask whether the defendant has read the presentence report and discussed it with his counsel, provided 'there is . . . evidence in the record from which one could reasonably infer' that the defendant and his counsel have read and discussed the report." *United States v. Lockhart*, 58 F.3d 86, 88 (4th Cir. 1995) (internal citations omitted).

Although the record does not show that the court expressly asked Locklear whether he had read the report, we conclude that the record supports the inference that Locklear and his counsel in fact read and discussed the report prior to sentencing. First, Locklear's counsel objected to the presentence report's enhancement for manufacture of counterfeit currency. While *Lockhart* makes clear that a written objection, standing alone, is not a sufficient basis to find compliance with Rule 32, *see* 58 F.3d at 88-89, here the evidence shows that Locklear's counsel not only objected in writing but also pursued the objection at the sentencing proceeding, at which Locklear was present. Second, Locklear's counsel made reference at the proceeding to the presentence report's summary of Locklear's childhood, and, relying on that summary, he stated that Locklear "has indicated to me" an explanation for his offenses. Finally, in the presence of Locklear and his counsel, the court concluded that "the basis for the findings contained in the presentence report [were] credible and reliable." We are, therefore, satisfied that Locklear and his counsel read and discussed the report prior to sentencing, even though this was not explicitly verified on the record. Accordingly, we find no plain error.

For the foregoing reasons, the judgment of the district court is affirmed. We also deny Locklear's motion, filed in this court, to adopt

into this record the record made in *United States v. Harrison*, 58 F.3d 115 (4th Cir. 1995).

*AFFIRMED*