**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alvin Thomas HARRISON, Jr.,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alvin Thomas HARRISON, Jr.,
Defendant–Appellant.**

Nos. 94–5054, 94–5128.

United States Court of Appeals,
Fourth Circuit.

Argued April 7, 1995.

Decided June 30, 1995.

As Corrected July 25, 1995.

**ARGUED:** Brian Edward Clemmons, Young, Moore, Henderson & Alvis, P.A., Raleigh, NC, for appellant. Robert Edward Skiver, Asst. U.S. Atty., Raleigh, NC, for appellee. **ON BRIEF:** Janice McKenzie Cole, U.S. Atty., Joseph N. Walden, III, 3rd Year Law Student, Duke University, Raleigh, NC, for appellee.

Before MURNAGHAN, NIEMEYER, and HAMILTON, Circuit Judges.

Vacated and remanded by published opinion. Judge HAMILTON wrote the majority opinion, in which Judge MURNAGHAN joined. Judge NIEMEYER wrote a dissenting opinion.

## OPINION

HAMILTON, Circuit Judge:

Alvin Thomas Harrison (Harrison) appeals his sentence following his plea of guilty to conspiracy to import marijuana and cocaine, *see* 21 U.S.C.A. § 963 (West Supp.1994). For the reasons that follow, we vacate Harrison's sentence and remand for resentencing.

### I.

Following Harrison's guilty plea, the presentence report (PSR) calculated Harrison's offense level at twenty-seven, which included a three-level reduction for acceptance of responsibility, *see* United States Sentencing Commission, *Guidelines Manual*, § 3E1.1 (Nov.1993). Harrison had forty-five criminal history points, putting him in Criminal History Category VI—the highest criminal history category.[1] Based on an offense level of twenty-seven and a Criminal History Category of VI, Harrison's guideline range, as calculated in the PSR, was 130 to 162 months. Given the significant number of Harrison's criminal history points, (forty-five), as compared to the maximum number of criminal history points in Criminal History Category VI, (thirteen), the PSR suggested that the district court consider an upward departure based on the inadequacy of Criminal History Category VI to reflect the seriousness of Harrison's past criminal conduct or the likelihood that he would commit other crimes, *see* USSG § 4A1.3.

Forty-two of Harrison's criminal history points resulted from his following convictions: (1) three counts of breaking and entering in 1984;[2] (2) no vehicle registration or insurance in 1985; (3) no vehicle insurance in 1988; (4) four counts of driving while license revoked in 1990; (5) driving while license permanently revoked in 1990; (6) breaking and entering in 1990 (commercial structure);

---

1. A defendant falls in Criminal History Category VI if he or she has thirteen or more criminal history points.

2. Neither the PSR nor the record discloses whether these counts involved dwellings or commercial structures.

(7) no vehicle insurance in 1990; (8) fictitious vehicle registration in 1990; (9) four counts of breaking and entering in 1992 (commercial structures); (10) four counts of forgery in 1992; (11) four counts of uttering in 1992; (12) sixteen counts of breaking and entering in 1993 (commercial structures); and (13) ten counts of larceny in 1993. Two of Harrison's criminal history points resulted from his being on parole when he committed the instant offense, *see* USSG § 4A1.1(d), and one resulted from his committing the instant offense less than two years following his release from custody on another charge, *see* USSG § 4A1.1(e).

At the beginning of Harrison's sentencing hearing, the district court adopted the recommendation of the PSR and found Harrison's offense level to be twenty-seven and his Criminal History Category to be VI. The district court then permitted counsel for Harrison to address the court. Counsel for Harrison presented argument as to why his client should be sentenced at the lower end of the guideline range. Counsel's argument focused on how his forty-five criminal history points painted a picture of him far more severe than in reality. Primarily, Harrison attributed his past criminal conduct to his addiction to drugs and alcohol. Secondarily, he attributed his high number of criminal history points to his traumatic childhood and his tendency as a follower to involve himself with the "wrong crowd." (J.A. 42).

After hearing counsel for Harrison's argument, the district court imposed sentence:

> All right, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant is hereby commit-ted to the custody of the Bureau of Prisons to be imprisoned for a term of 235 months, to run concurrent with the term of imprisonment he is presently serving in the North Carolina Department of Corrections, pursuant to the provisions of 5G1.3C [sic]. The court has departed upwardly pursuant to section 4A1.3, as the defendant's criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct, or the likelihood that he will commit other crimes, and the repetitive nature and seriousness of his prior criminal conduct involving breaking and entering offenses, warrants upward departure to punishment commensurate with career offender provisions.

*Id.* at 43–44. Notably, the district court did not indicate to which guideline range it was departing.[3] Harrison filed a timely appeal.[4]

## II.

On appeal, Harrison contends his sentence should be vacated because in departing upward based on the inadequacy of his criminal history category, *see* USSG § 4A1.3, the district court did not comply with the dictates of *United States v. Cash*, 983 F.2d 558, 561–63 (4th Cir.1992), *cert. denied,* ––– U.S. –––, 113 S.Ct. 2380, 124 L.Ed.2d 284 (1993), or *United States v. Rusher*, 966 F.2d 868, 884 (4th Cir.), *cert. denied,* ––– U.S. –––, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992).

In *Cash*, we took the opportunity to outline the methodology a district court should employ in determining the extent of a departure after it has concluded that the

---

3. We reasonably can infer from the scant record that the district court departed upward four offense levels from offense level twenty-seven, with a sentencing range of 130 to 162 months, to offense level thirty-one (the offense level the district court would have arrived at had Harrison been sentenced as a career offender pursuant to USSG § 4B1.1 and received a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1).

Harrison's conviction under 21 U.S.C.A. § 963 (West Supp.1995) carries a maximum statutory sentence of forty years, resulting in a career offender offense level of thirty-four. *See* USSG § 4B1.1(B). We arrive at offense level thirty-one by subtracting three levels for acceptance of re-sponsibility, a reduction the district court granted when it calculated Harrison's offense level prior to addressing the question of departure. Based on an offense level of thirty-one and a Criminal History Category of VI, Harrison's Guideline range would have been 188 to 235 months.

4. Shortly after Harrison was sentenced, the government filed a motion for reduction of sentence for substantial assistance pursuant to Fed. R.Crim.P. 35(b) and USSG § 5K1.1, p.s. Subsequently, the district court reduced Harrison's sentence to 178 months' imprisonment. Harrison appeals from both the original judgment and the amended judgment.

defendant's criminal history category is inadequate. First, we explained that a district court may exercise its discretion under USSG § 5K2.0, p.s., not to depart, *see Cash,* 983 F.2d at 561, a decision that is unreviewable on appeal, *see United States v. Bayerle,* 898 F.2d 28, 30–31 (4th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990). Second, we reiterated the level-by-level approach developed in *Rusher. Cash,* 983 F.2d at 561. Under this tack, the court can "move to successively higher categories only upon finding that the prior category does not provide a sentence that adequately reflects the seriousness of the defendant's criminal conduct," and may formulate additional "Criminal History Categories above Category VI, in order to craft a departure that corresponds to the existing structure of the guidelines." *Id.* Third and finally, we recognized that once the district court has determined that a departure under USSG § 4A1.3 is warranted and the defendant's prior criminal conduct is sufficiently serious to conclude that he should be treated as a career offender, the district court may depart upward directly, without making level-by-level findings, to the Guideline range applicable to career offenders similar to the defendant. *Id.* at 562.[5] Under this *de facto* career offender method, the district court must conclude that the defendant's "underlying past criminal conduct demonstrates that the defendant would be sentenced as a career offender but for the fact that one or both of the prior predicate convictions may not be counted." *Id.* In other words, the district court may sentence a defendant as a *de facto* career offender when he has committed two crimes that would qualify as predicate crimes for career offender status, but for some reason cannot be counted. For example, a defendant may be sentenced as a *de facto* career offender if one or both of his prior predicate convictions is constitutionally in-

firm, *see id.,* or if two of the defendant's prior crimes of violence are consolidated for sentencing purposes and thus do not constitute two separate predicate felony convictions, *see United States v. Hines,* 943 F.2d 348, 354–55 (4th Cir.) (*per curiam* ), *cert. denied,* 502 U.S. 993, 112 S.Ct. 613, 116 L.Ed.2d 635 (1991). At a minimum, the defendant has to have been convicted of two prior crimes each of which constitutes either a crime of violence or a controlled substance offense.

■ The district court did not make level-by-level findings to justify its departure from offense level twenty-seven to presumably offense level thirty-one (We assume that this is the offense level to which the district court departed, *see* note 3.), and thus its departure cannot be sustained on the authority of *Rusher.* Indeed, there is not even a hint in the record that the district court attempted to comply with the procedural dictates that we explicitly outlined in *Rusher.* Consequently, we must examine whether the district court properly departed upward pursuant to the *de facto* career offender method recognized in *Cash.*

■ With respect to Harrison's *de facto* career offender argument under *Cash,* we note initially that Harrison does not challenge on appeal the propriety of the district court's underlying reason for its decision to depart upward—the inadequacy of Harrison's criminal history category to reflect the seriousness of his past criminal conduct or the likelihood that he would commit other crimes. *See* USSG § 4A1.3. Rather, his argument is based solely on his contention that the district court could not employ the *de facto* career offender method because his past criminal conduct does not demonstrate that he "would be sentenced as a career offender but for the fact that one or both of the prior predicate convictions may not be

---

**5.** "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG 4B1.1. "The term 'crime of violence' means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—(i) has as an element the use, attempted use or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2.

counted." *Cash*, 983 F.2d at 562. We agree with Harrison's argument.

Harrison satisfies the age and the instant offense requirements for treatment as a career offender under § 4B1.1. However, only Harrison's three 1984 breaking and entering convictions may possibly qualify as predicate convictions under USSG § 4B1.2 as his post–1984 breaking and entering convictions all involved burglaries of commercial structures, and thus do not qualify as crimes of violence. *See* § 4B1.2, comment. (n.2). The PSR does not specify whether the 1984 breaking and entering convictions involved dwellings or commercial structures and under USSG § 4B1.2 only burglary of a dwelling constitutes a crime of violence. Because the record does not reflect whether the 1984 breaking and entering convictions involved dwellings or commercial structures, the district court was not at liberty to sentence Harrison as a *de facto* career offender. Accordingly, we cannot sustain Harrison's sentence under the *de facto* career offender method that we recognized in *Cash*. This conclusion, when coupled with our previous conclusion that Harrison's sentence cannot be sustained under *Rusher*, requires that we vacate Harrison's sentence and remand for resentencing.

While we do not express any opinion on the merits of the departure in this case, if on remand, the district court holds to its decision to depart upwardly, it must either make level-by-level findings to justify its departure or, assuming supplementation of the record, conclude that Harrison qualifies as a *de facto* career offender under the principles set forth in *Cash*.

### III.

For the reasons set forth in this opinion, we vacate Harrison's sentence and remand this case to the district court for resentencing.[6]

*VACATED AND REMANDED.*

**6.** On appeal, Harrison also challenges his sentence on the ground that the district court did not provide him with adequate notice of a possi-

NIEMEYER, Circuit Judge, dissenting:

Defendant Alvin Thomas Harrison, Jr., was indicted in 12 counts for participation in an international conspiracy to distribute and sell controlled substances. Pursuant to a plea agreement, he pled guilty to one count of conspiring, over a period from December 1990 to February 1992, to import marijuana and cocaine in violation of 21 U.S.C. § 963. At sentencing, the probation office calculated that Harrison's offense level was 27 and that, with 45 criminal history points, his criminal history category was VI, for a sentencing range of 130–162 months imprisonment. Departing upwardly because that criminal history category did not adequately represent Harrison's past criminal conduct, the district court sentenced Harrison to 235 months imprisonment. On appeal Harrison challenges the upward departure. For the reasons that follow, I would affirm.

Harrison has an exceptionally long history of criminal conduct, repeatedly and predictably committing crimes over a ten-year period during which he was an adult. He was convicted on 18 separate occasions, and on most occasions, the prosecutor aggregated several different violations committed at different times. During the ten-year period, Harrison was convicted of over 30 separate breaking and enterings, usually of commercial establishments, although this is not firmly established in the record. He was arrested on numerous other occasions for criminal conduct where the charges were dismissed, usually because the prosecuting witness did not appear. These included arrests for six other breaking and enterings, assault on a female, and resisting arrest. The aggregate criminal history points assessed in the presentence investigation report by the probation officer total 45. The report advised Harrison that he should be prepared at sentencing to present evidence and make argument regarding the possibility that the court would depart upwardly if Harrison's criminal history category did not adequately reflect the seriousness of Harrison's past criminal conduct.

ble upward departure. Given our disposition, we need not address this challenge.

In sentencing Harrison, the district court concluded that:

> [T]he defendant's criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct, or the likelihood that he will commit other crimes, and the repetitive nature and seriousness of his prior criminal conduct involving breaking and entering offenses, warrants upward departure to punishment commensurate with career offender provisions.

The district court could not sentence Harrison as a career offender because it could not be determined from the record whether any of Harrison's breaking and entering convictions involved a dwelling or an establishment with persons in it so as to present "a serious potential risk of physical injury to another." *See* U.S.S.G. § 4B1.2(1)(ii). Only two such predicate offenses would be required to sentence Harrison as a career offender. *See* U.S.S.G. § 4B1.1. Nevertheless, the court found that the accumulation of Harrison's past criminal conduct was equivalent in seriousness to career offender status. Since career offender status specifies sentencing at a particular offense level and criminal history category, the court proceeded to that level and category to sentence Harrison. Presumably applying the guidelines of U.S.S.G. § 4B1.1, the court sentenced Harrison to 235 months imprisonment.

I believe that the district court's method fully complied with the Sentencing Guidelines and with our precedents in *United States v. Cash*, 983 F.2d 558 (4th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2380, 124 L.Ed.2d 284 (1993), and *United States v. Rusher*, 966 F.2d 868 (4th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992).

The Sentencing Guidelines provide that the court may depart upwardly when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3, p.s. The information may relate either to prior sentences or to prior similar adult criminal conduct not resulting in a conviction. *Id.* The policy statement provides that when the court concludes from a review of this information that the defendant's criminal history "was significantly more serious than that of most defendants in the same criminal history category," it may consider an upward departure. *Id.* When departing upward, the court should attempt to evaluate the defendant's past criminal conduct and place it by analogy within the existing Sentencing Guideline structure. For instance, the Guidelines instruct that if the court finds that Criminal History Category III significantly under-represents the defendant's criminal history, and the seriousness of the defendant's criminal past most closely resembles that of "most defendants" with a criminal history category of IV, the court may proceed to sentence the defendant under Category IV. *Id.*

In *Rusher*, we held that when departing upward, the court is not authorized by the Sentencing Guidelines to exercise unguided discretion by simply selecting a sentence which the court finds appropriate and then working backwards to find a guideline range that matches the selected sentence. To sentence in that fashion would violate the structure and procedures imposed by the Sentencing Guidelines. In *Rusher*, the district court asked the probation officer, "How far do I have to deviate upward, to what criminal offense level, to give him 120 months?" Holding that method improper, we stated:

> The court essentially bypassed the criminal history categories entirely in its desire to impose a particular sentence. This cannot be done under the sentencing guidelines regime. Sentencing is not purely a matter of judicial discretion, but must be done by reference to the guidelines and their stated criminal history categories.

966 F.2d at 883.

In *Cash*, however, we approved a district court's upward departure, moving *directly* to the career offender level even though the defendant's conduct did not strictly meet the requirements of career offender status because the predicate offenses were subject to constitutional challenge. 983 F.2d at 562. We held that if the past criminal conduct of a defendant would place him in career offender status but for the fact that one or both of the prior predicate offenses may not be counted

because of a constitutional infirmity, the court could still sentence at the career offender level by departing upward based on the underlying conduct. In proceeding *directly* to career offender status, we authorized the court to skip over any criminal history categories between the originally specified category and career offender status, since a finding that the defendant's conduct was tantamount to career offender status "includes an implicit finding that each successive criminal history category that would not produce a career offender status inadequately represents the seriousness of the defendant's criminal conduct." *Id.* In *Cash,* therefore, we concluded, despite any *dicta* to the contrary in *Rusher,* that a level-by-level consideration was *not* always necessary. *See id.* at 561–62 & n. 7.

In this case, even though the reason for finding Harrison's past conduct to be commensurate with career offender status was not the same as that relied on in *Cash,* the methodology utilized was the same in both cases. In both cases, the technical definition of career offender status could not be met, but the district courts found that the past conduct was *commensurate* with career offender status. In *Cash,* there were constitutional challenges to the predicate crimes of violence; in this case the record was insufficient to determine whether, in at least two breaking and enterings, there was a risk of physical injury to others. In this case there is the additional fact that Harrison's past criminal conduct was constant and repeated over a period of 10 years. Not only did Harrison break into and enter over 30 different establishments and buildings, he was arrested for having assaulted a female and he resisted arrest, neither of which yielded criminal charges because the prosecuting witnesses did not wish to proceed. The Sentencing Guidelines assign 45 points to Harrison's criminal past, a criminal history level that is more than three times the highest on the Sentencing Guidelines chart and more than I have ever seen while sitting on this court. While the particular circumstances of Harrison's criminal conduct concededly do not satisfy the statutory definition of a career offender, the district court did not abuse its discretion in finding his conduct to be *commensurate* with career offender status.

Evaluating Harrison's criminal history through another method corroborates the district court's conclusion. If we were to extend the criminal history category chart, extrapolating horizontally beyond the existing sentencing table, as authorized in *Cash,* 983 F.2d at 561, Harrison would merit a criminal history category of approximately XVI. And, at an offense level of 27, his projected sentence would be far greater than that selected by the district court.

Once we determine that the district court did not abuse its discretion in finding that Harrison should be sentenced at a level commensurate with career offender status, then the appropriate sentencing range is readily obtained. Section 4B1.1 specifies that for the crime of which Harrison was convicted (providing for a maximum statutory sentence of 40 years), he should be sentenced at an offense level of 34 with a criminal history category of VI. With a three-level reduction for acceptance of responsibility, the sentencing range would be 188–235 months imprisonment. The district court sentenced Harrison to 235 months, at the top of the specified range.

Accordingly, I would affirm the judgment of the district court and I respectfully dissent.