**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                No. 03-4867

GAY SANFORD WASHINGTON,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-03-13)

Argued: October 26, 2004

Decided: April 15, 2005

Before LUTTIG, KING, and DUNCAN, Circuit Judges.

Vacated and remanded by published opinion. Judge King wrote the majority opinion, in which Judge Duncan concurred. Judge Luttig wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Jonathan David Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Joshua Clarke Hanks, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, Edward H. Weis, Assistant Federal Public Defender,

Charleston, West Virginia, for Appellant. Kasey Warner, United States Attorney, Charleston, West Virginia, for Appellee.

## OPINION

KING, Circuit Judge:

Gay Sanford Washington appeals from the sentence imposed upon him in the Southern District of West Virginia after his plea of guilty to a single offense of felonious possession of a firearm, in contravention of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Washington contends that he was sentenced erroneously when the district court determined that his prior conviction for breaking and entering constituted a "crime of violence" under United States Sentencing Guidelines Manual §§ 2K2.1(a)(4) and 4B1.2(a)(2) (2003), and enhanced his sentence accordingly. As explained below, we vacate Washington's sentence and remand for further proceedings consistent with *United States v. Booker*, 125 S.Ct. 738 (2005), and *Shepard v. United States*, 125 S. Ct. 1254 (2005).

I.

On April 1, 2003, Washington entered a plea of guilty to being a felon in possession of a firearm. The applicable provision of the Sentencing Guidelines, § 2K2.1(a), provides for a base offense level of 14, and for an enhanced base offense level of 20 when the defendant has been previously convicted of a "crime of violence." USSG § 2K2.1(a)(4). In 1996, Washington was convicted in Putnam County, West Virginia, of the state law felony of breaking and entering. *See* W. Va. Code § 61-3-12. Washington's initial Presentence Report ("PSR") revealed that his prior conviction was for breaking and entering the offices of a drug and violent crime task force, and it characterized the offense as a "crime of violence." The probation officer accordingly recommended that Washington's offense level be fixed at the enhanced level of 20. Washington objected, asserting to the probation officer that his prior offense was not a "crime of violence" under the Guideline, or under our decision in *United States v. Harrison*, 58 F.3d 115 (4th Cir. 1995) (concluding that defendant's burglary of

commercial building was not crime of violence). The probation officer accepted the objection and revised Washington's PSR accordingly, lowering his base offense level to 14.

At Washington's first sentencing hearing, on June 17, 2003, the Government objected to the PSR as revised. In objecting, the Government relied on § 4B1.2(a)(2) of the Guidelines, which provides that a "crime of violence" includes an offense which "is burglary of a dwelling . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."[1] In support of this position, the Government contended that the circumstances of Washington's prior offense, the breaking and entering of a drug and violent crime task force, "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another," USSG § 4B1.2(a)(2), bringing it within the Guideline definition.

In conducting the hearing, the sentencing court posed a series of pertinent questions to counsel on the crime of violence issue, including questions as to the specifics of Washington's prior offense. It first inquired as to the title, function, and location of the Task Force whose offices were burglarized. In response, the Assistant United States Attorney represented to the court:

> Your Honor, I believe . . . that the building that was broken into housed this particular Drug and Violent Crime Task Force. In that particular building rests a great deal of potential for violence. Not only does it house evidence, narcotics, weapons, it frequently has — I believe this particular office has surveillance equipment, security alarms. It is frequently

---

[1]Application Note 1 of the Commentary to § 4B1.2 further explains that a:

> "[c]rime of violence" includes . . . burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another.

> manned at all hours of the day and night, although I don't believe it is routinely a 24-hour manned facility.
>
> I believe . . . that an individual who breaks into such an office certainly creates this other type of potential for risk of violent injury. . . .

(J.A. 61). The court inquired further as to the specifics of the offense, asking: "What else do you know about the circumstances of the break-in?" and "[y]ou don't know the hour of the break-in or the day?" (J.A. 62). The court then continued the sentencing hearing to a later date, directing the parties to brief both the issue of what material the court could consider in determining whether Washington's prior offense was a "crime of violence," and what specific conduct was at issue in the prior offense.[2] The court also advised, "the government has the burden of proof on the matter."

On June 19, 2003, the Government filed a sentencing memorandum setting forth a variety of allegations regarding Washington's prior conviction. The memorandum advised that the crime was committed "[i]n the early morning hours of December 11, 1995," when the "defendant along with two accomplices broke into the office of the Midwestern Task Force by breaking a ground-level window." It also related, *inter alia*, that Washington and his "two accomplices" had stolen firearms and several varieties of drugs. The Government attached the police report and criminal investigation report to its memorandum.[3]

---

[2]In requesting briefing on the crime of violence issue, the court advised counsel that, "if it is . . . appropriate . . . to look to the specifics of the crime, then either by stipulation or by evidence, the government needs to present the Court with the facts."

[3]The Government's sentencing memorandum failed to address the issue of the information and sources on which the court could properly rely. Washington's brief urged the court, however, to consider only the elements of the offense and the conduct "expressly charged in the count of conviction." Washington contended that application of this rule required the court to disregard all evidence of items stolen, particularly drugs and guns, and the alleged existence of security alarms or police patrols.

The factual background of Washington's prior state conviction, as spelled out in the prosecution's sentencing memorandum, was not contained in or suggested by the indictment itself, which merely alleged in Count 1 that Washington "did unlawfully and feloniously break and enter a building of the City of Hurricane . . . occupied by the Midwestern Drug and Violent Crime Task Force with intent to . . . steal" Task Force "goods and property."[4] Likewise, the plea materials of record in the state court proceeding provided no other details on the breaking and entering conviction.

At Washington's final sentencing hearing on August 29, 2003, the court applied the "crime of violence" enhancement and sentenced accordingly. In so ruling, the court looked to the provisions of § 4B1.2(a)(2), specifying that a "crime of violence" includes a crime that "involves conduct that presents a serious potential risk of physical injury to another," and to the accompanying Application Note. Because the break-in underlying Washington's prior conviction was not of a dwelling, the court concluded that the earlier offense was not, in the abstract, a crime of violence. The court then made a two-tiered determination, characterized in the Statement of Reasons section of its Judgment Order as "*findings of fact* and conclusions of law" made by a "*preponderance of the evidence*." (J.A. 165) (emphasis added). It ruled that the conduct "expressly charged" in the indictment warranted the conclusion that "breaking and entering of a government-owned building to steal the goods and property of a drug and violent crime task force is conduct that, by its nature, presents a serious potential risk of physical injury to another." The court explained that conclusion as follows:

> Based on common experience, it is reasonable to expect that quarters occupied by a drug and violent crime unit would contain both drugs and guns that are protected from theft; that, even if no one affiliated with the task force was present at the time of a breaking and entering into its quarters, one

---

[4]Count 2 of the state court indictment alleged that Washington had committed "Grand Larceny" in that he "did unlawfully and feloniously steal . . . the property of the Midwestern Drug and Violent Crime Task Force." Washington pleaded guilty to Count 1 of the indictment only, charging him with breaking and entering, and Count 2 was dismissed.

or more members or employees of the task force may show up there at any time of day or night in view of the oft-times clandestine and nocturnal nature of their work; and such persons would be armed.

The act of breaking and entering such a facility is a reckless, dangerous act which, by its very nature, is fraught with serious potential for confrontation and risk of substantial physical harm to another.

(J.A. 166-67). Based on this assessment, the court fixed Washington's base offense level at the enhanced level of 20, applied a three-level reduction for acceptance of responsibility, for a final offense level of 17, and sentenced Washington to thirty months of imprisonment.

## II.

Washington has appealed his sentence, maintaining that the district court misapplied circuit precedent and the Guidelines in determining that his prior breaking and entering offense constituted a crime of violence. On appeal, he also contends that his sentence violated the Sixth Amendment, relying on *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

Because Washington did not raise his *Blakely* claim in the district court, we review that contention for plain error only. *See* Fed. R. Crim. P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the district court."). In order for Washington to prevail under Rule 52(b), "there must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano*, 507 U.S. 725, 732 (1993). Moreover, because "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals," we may exercise our discretion to recognize plain error only when "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).

## III.

This appeal presents the question of the scope of the "fact of a prior conviction" exception to the Sixth Amendment protections outlined in

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, including *United States v. Booker*, 125 S. Ct. 738 (2005). More specifically, it requires that we address the question of whether the Sixth Amendment is offended when a sentencing court makes findings of fact regarding the circumstances of a defendant's prior conviction, and then relies on such findings to reach the conclusion that the prior conviction "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another," USSG § 4B1.2(a)(2), and enhances the defendant's sentence as a result.

### A.

Two important recent developments in Sixth Amendment jurisprudence guide our analysis of this case. First, in *Booker*, the Court held that the Sixth Amendment is contravened when a sentencing court, acting pursuant to the Guidelines, imposes a sentence greater than the maximum authorized by facts, other than the fact of a prior conviction, admitted by the defendant or found by the jury alone. *Booker*, 125 S. Ct. at 750-51. Second, in *Shepard*, the Court recently instructed that Sixth Amendment protections apply to "a disputed fact . . . *about* a prior conviction." 125 S. Ct. at 1262 (emphasis added).

### 1.

As the Court's line of decisions originating with *Apprendi* make clear, the Sixth Amendment mandates that "any fact *other than a prior conviction* sufficient to raise the limit of the possible federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant." *Shepard*, 125 S. Ct. at 1262 (citing *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)) (emphasis added). This protection applies to the Sentencing Guidelines, which, though promulgated not by Congress itself but by the United States Sentencing Commission, had until recently the force and effect of law, and thus implicate the Sixth Amendment. *Booker*, 125 S. Ct. at 750. In order to determine whether a Sixth Amendment error occurred in Washington's sentencing, we look first to whether the sentencing court imposed a "sentence exceeding the maximum allowed based only on the facts found by the jury." *United States v. Hughes*, No. 03-4172, 2005 WL 628224, at *5 (4th Cir. Mar. 16, 2005). More specifically, we must assess whether the sentencing court's enhancement fits

within the "fact of a prior conviction" exception of *Apprendi* and *Booker*.

2.

The "fact of a prior conviction" exception specified in *Apprendi* originated in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). In that case, the Court addressed the appeal of an alien who had pleaded guilty to re-entering the United States illegally after his deportation, in contravention of 8 U.S.C. § 1326. A subsection of that statute authorized a sentence of up to twenty years for an alien who illegally returned to this country after having previously been deported following an aggravated felony. *See* 8 U.S.C. § 1326(b)(2). The Court determined that the failure of the indictment to allege the defendant's prior aggravated felonies and the applicability of subsection (b)(2) neither contravened the Sixth Amendment nor implicated due process concerns, because the statutory provision was simply a penalty provision to be applied by a sentencing judge in a post-conviction setting — *i.e.*, it was not a separate offense. *Almendarez-Torres*, 523 U.S. at 233-36.

In *Apprendi*, 530 U.S. at 490, the Court enunciated its holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In explaining this rule, the Court in *Apprendi* limited its ruling in *Almendarez-Torres*, pointing to two factors that distinguished Almendarez-Torres's case: "the certainty that procedural safeguards attached to any 'fact' of prior conviction" and "the reality that Almendarez-Torres did not challenge the accuracy of that fact in his case." *Id.* at 488. Together, these factors "mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." *Id.*

3.

In its recent *Shepard* decision, the Court addressed the application of the prior conviction exception to a disputed fact "*about* a prior conviction." 125 S. Ct. at 1262 (emphasis added). Shepard, who was con-

victed under 18 U.S.C. § 922(g), initially faced a maximum sentence, under the Guidelines, of thirty-seven months; however, the Government sought to increase his sentence to the fifteen-year mandatory minimum of § 924(e), which applies to felons with three prior drug or violent felony convictions. Shepard had three prior burglary convictions, and the Government maintained that those burglaries constituted "violent felonies." *Shepard*, 125 S. Ct. at 1258.

In making this contention, however, the Government ran afoul of *Taylor v. United States*, 495 U.S. 575 (1990), where the Court had earlier determined that a "violent felony," pursuant to 18 U.S.C. § 924(e), includes only the burglary of a structure or building ("generic burglary"), not other types of burglary, such as burglaries of cars or vessels.[5] The burglary statute of Massachusetts, where Shepard's three earlier convictions occurred, is broader than generic burglary, and can also include burglary of a non-structure, such as a car or vessel. Shepard's indictment did not specify whether burglary of a structure, *i.e.*, generic burglary, was at issue in his convictions. As a result, the First Circuit instructed the sentencing court to answer this question by looking to the relevant complaint applications and police reports. *United States v. Shepard*, 348 F.3d 308, 310-11 (1st Cir. 2003), *vacated by* 125 S. Ct. 1254 (2005).[6] The Supreme Court granted certiorari and reversed the First Circuit. In so doing, the Court reiterated its holding in *Taylor* that a sentencing court addressing § 924(e) cannot consider items from the record of a prior conviction that were not conclusively validated in the earlier proceeding. *Shepard*, 125 S. Ct. at 1260-61.

An opinion authored by Justice Souter in *Shepard* and joined by three other Justices (of the eight participating),[7] characterized *Tay-*

---

[5]Section 924(e) of Title 18, in contrast to the Guideline at issue here, USSG § 4B1.2(a), explicitly lists "burglary" as a "violent felony" offense.

[6]The complaint applications and police reports relating to Shepard's earlier offenses made clear that the crimes "were for entries into buildings and so constituted generic burglaries under *Taylor*." *Shepard*, 348 F.3d at 310.

[7]The Chief Justice did not participate in the *Shepard* decision. Though the Sixth Amendment portion of *Shepard* was rendered by a plurality

*lor*'s statutory construction rule as of Sixth Amendment significance. The plurality opinion first explained that a burglary conviction rendered in a generic burglary state inherently identifies the offense as a "violent felony," and the "judicial finding of a disputed prior conviction is made on the authority of *Almendarez-Torres*." *Shepard*, 125 S. Ct. at 1262. However, when the definition of the prior crime itself does not reveal whether the conviction was for generic burglary, as Justice Souter explained, the "only certainty of a generic finding lies in jury instructions, or bench trial findings and rulings, or (in a pleaded case) in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea." *Id.*

A sentencing court's consideration of materials beyond those documents identified by the Court, the *Shepard* plurality advised, "raises the concern underlying *Jones* and *Apprendi*." *Id.* It deemed "debatable" which, if any, facts contained in such additional documents were part of what the state court was "required to find" as a basis for the earlier conviction. *Id.* If the sentencing court were to determine which facts the state court was "required to find" as part of the judgment, the sentencing court would "make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea." *Id.* Such a "disputed fact . . . about a prior conviction" is "too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute." *Id.* As a result, Justice Souter's plurality opinion advised that the Court's construction of § 924(e) is "necessary to avoid serious risks of unconstitutionality." *Id.* at 1263.

Justice Thomas's concurring opinion announced an even stronger view: that a sentencing court's reliance on items beyond the charging papers in the earlier case would give rise not merely to constitutional doubt, but to constitutional *error*. *See Shepard*, 125 S. Ct. at 1263-64 (Thomas, J., concurring in part and concurring in the judgment). A majority of the *Shepard* Court thus agreed that any inquiry beyond

only, Justice Thomas filed a concurring opinion, announcing a view on the application of the Sixth Amendment even stronger than that expressed by the plurality opinion. *Shepard*, 125 S. Ct. at 1263-64 (Thomas, J., concurring in part and concurring in the judgment).

charging documents and the like, in the context of the application of § 924(e), at the very least raises "serious" constitutional "risks."

B.

Washington's case raises the issue of the scope and substance of the Sixth Amendment "risks" identified in *Shepard*. The sentencing court increased Washington's sentence above that authorized by his earlier guilty plea to the breaking and entering charge alone, and did so based on its determination that Washington's conviction was for a "crime of violence," because it "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2). In making this determination, the sentencing court relied on facts outside the indictment containing the prior breaking and entering offense. As applied to Washington's appeal, the *Apprendi* line of decisions mandates the conclusion that this procedure involved more than the "fact of a prior conviction" exempted by *Apprendi* from Sixth Amendment protection. Accordingly, as explained below, Washington's sentence was imposed in violation of his Sixth Amendment rights.[8]

1.

The sentencing court relied on facts outside the indictment in concluding that Washington's prior offense was a crime of violence. Although the court began with the conduct expressly charged — Count 1 of Washington's earlier indictment — the court then found additional facts about the building that was subjected to the break-in.[9] These facts included what, from the court's common experience, the

---

[8]As reflected herein, we need not reach Washington's contention that a burglary of a commercial structure does not, as a matter of law, constitute a "crime of violence" under the Guidelines. *See United States v. Harrison*, 58 F.3d 115 (4th Cir. 1995).

[9]The court's characterization of its findings about the Task Force office as derived from "common experience" does not make them any less "facts." *See* Fed. R. Evid. 201 (allowing court to take judicial notice of adjudicative "fact"); *Ohio Bell Tel. Co. v. Pub. Util. Comm'n of Ohio*, 301 U.S. 292, 301 (1937) ("notice, even when taken, has no other effect than to relieve one of the parties to a controversy of the burden of resorting to the usual forms of evidence"). *See also United States v. Lewis*, 833 F.2d 1380, 1385 (9th Cir. 1987) ("a trial judge is prohibited from relying on his personal experience to support the taking of judicial notice") (citing 9 J. Wigmore, Evidence in Trials at Common Law § 2569, at 723 (J. Chabourn rev. ed. 1981)).

building's likely contents were; the identity of any occupants; and the probable level of security. These additional, hypothetical facts were specific: *e.g.*, that "drugs and guns" would be present on the premises; that such items would be "protected from theft"; that, "even if no one affiliated with the Task Force was present at the time" of the break-in, "one or more members or employees" could "show up there at any time of day or night in view of the oft-times clandestine and nocturnal nature of their work"; and that any such employee "would be armed." While the court characterized these facts as arising from its common experience, they echoed the extra-indictment information presented by the Government.[10]

Significantly, the additional facts found and relied upon by the sentencing court were nowhere alleged in Washington's state court indictment. That indictment merely identified the building as one occupied by the Midwestern Drug and Violent Crime Task Force. Importantly, it did not reveal whether the Task Force office consists of bureaucratic administrators or police officers, or the nature of property contained therein — *e.g.*, computers and files or drugs and guns.

In these circumstances, the sentencing court relied on facts outside of the prior indictment and resolved a disputed fact "*about* a prior conviction," *see Shepard*, 125 S. Ct. at 1262 (emphasis added) — namely, that the prior conviction was one which "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2). These findings are "too far

---

[10]The Government had represented to the court that the building housed "evidence, narcotics, weapons," that "I believe this particular office has surveillance equipment, security alarms," and that the building "is frequently manned at all hours of the day and night, although I don't believe it is routinely a 24-hour manned facility." (J.A. 61). These representations were part of a colloquy between the Government and the court about the facts of Washington's prior conviction, facts which were not spelled out in the charging and plea documents for that offense. This investigation by the court into the circumstances of Washington's prior offense, and its careful consideration of what the possible consequences of those circumstances might be, was clearly attributable to its characteristic thoroughness. However judicious that inquiry may have been, however, in the post-*Booker* (and post-*Shepard*) world, it was beyond the inquiry now permitted.

removed from the conclusive significance of a prior judicial record," and "too much like the findings subject to *Jones* and *Apprendi*," *Shepard*, 125 S. Ct. at 1262, "to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute," *id.* This process and its results thus raise the very "risk" identified in *Shepard*, that Sixth Amendment error occurred.

2.

The question before us concerns whether the "risk" identified by the Court in *Shepard* was actually realized here — that is, whether the sentencing court's use of extra-indictment facts contravened Washington's Sixth Amendment rights. And, as explained below, we are constrained to conclude that it was.

There is no question that the extra-indictment facts relied on by the sentencing court, and its conclusion that Washington's prior offense constituted a "crime of violence," were not necessarily determined in the earlier proceeding. Washington pleaded guilty to the breaking and entering count of the prior indictment only, and no judicial determination was made that Washington had committed larceny — much less what, if anything, was stolen from (and therefore contained in) the building. Washington's prior guilty plea in no way implicated the level of the building's security system, the nature of its employees and their activities, or whether they at times return to work at night. As a result, the foregoing aspects of the prior conviction, which were relied upon by the sentencing court to enhance Washington's base offense level, were *not* part of what the state court was "required to find" as part of Washington's conviction. *Shepard*, 125 S. Ct. at 1262.

Furthermore, the special circumstances identified by the Court in *Almendarez-Torres* are not present here. *See Apprendi*, 530 U.S. at 488 (noting that *Almendarez-Torres* admitted that his prior conviction was for an "aggravated felony"). Washington contests both the additional facts relied upon by the sentencing court, and the court's conclusion, based on those facts, that his prior conviction was a "crime of violence" because it "otherwise involved conduct that presented a serious risk of potential physical injury to another." Washington has not waived this issue, *Shepard*, 125 S. Ct. at 1262, and the "procedural safeguards" concern of the *Apprendi* line of decisions thus have

not been satisfied. *See Apprendi*, 530 U.S. at 488. As a result, the sentencing court's reliance on extra-indictment facts in concluding that Washington's prior offense constituted a "crime of violence" resulted in an enhancement to Washington's sentence based on more than the "fact of" his prior conviction. *See Shepard*, 125 S. Ct. at 1262-63. A Sixth Amendment error thus occurred.

### C.

In conclusion, the sentencing court's application of the crime of violence enhancement of §§ 2K2.1(a)(4) and 4B1.2(a) of the Sentencing Guidelines in Washington's sentencing proceedings was error under *Booker* and *Shepard*. And, even though both those decisions were rendered by the Supreme Court after Washington was sentenced, the error was nonetheless "plain" at the time of our appellate review. *See Johnson v. United States*, 520 U.S. 461, 468 (1997) (finding that an error is plain "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal"). The sentencing court's application of § 2K2.1(a)(4) in Washington's case resulted in at least nine months of additional imprisonment for him. In these circumstances, "the sentence imposed by the district court as a result of the Sixth Amendment violation was longer than that to which he would otherwise be subject," *Hughes*, 2005 WL 628224, at *6 (quoting *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001) (en banc)), and the sentence contravened Washington's substantial rights. *See Hughes*, 2005 WL 628224, at *5-6; *accord United States v. Promise*, 255 F.3d 150, 160 (4th Cir. 2001) (en banc) (holding that *Apprendi* error resulting in increased sentence affects defendant's substantial rights). Finally, consistent with *Hughes*, to leave standing Washington's sentence, which was at least nine months longer than he could have received without the error, would place in jeopardy the fairness, integrity, or public reputation of judicial proceedings. *Hughes*, 2005 WL 628224, at *13; *see also United States v. Washington*, 398 F.3d 306, 312-13 (4th Cir. 2005) (recognizing error resulting in five months extra imprisonment).

### IV.

Pursuant to the foregoing, we vacate Washington's sentence and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

LUTTIG, Circuit Judge, dissenting:

Contrary to the majority's conclusion, it is beyond question that the district court determined that Washington's prior conviction was a crime of violence, based exclusively upon the facts presented in the indictment underlying that prior conviction. Neither that crime of violence determination nor the indictment facts exclusively relied upon by the district court are required to be found by a jury under *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), and therefore Washington's sentence is not infirm as a consequence of either the district court's ultimate determination or its reliance upon the indictment's facts. The district court's imposition of sentence pursuant to a mandatory guidelines regime, in contrast, was error under *United States* v. *Booker*, 125 S. Ct. 738 (2005). However, I would not notice that error here, because Washington's substantial rights were not affected by that error, and because affirming Washington's sentence would not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States* v. *Olano*, 507 U.S. 725, 732 (1993). Accordingly, I dissent.

## I.

As the majority concedes, the "fact of a prior conviction" is excepted from the *Apprendi* framework. *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). *Apprendi*'s prior conviction exception derives, at least in part, from *Almendarez-Torres* v. *United States*, 523 U.S. 224 (1998), wherein the Court held that prior convictions not included in Almendarez-Torres' indictment could properly form the basis of an increase in his sentence. *Id*. at 243 ("[T]he sentencing factor at issue here — recidivism — is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence."). The *Apprendi* court explained that "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing

punishment beyond the maximum of the statutory range." *Apprendi*, 530 U.S. at 488.

The district court's enhancement of Washington's sentence plainly fits within this exception to the rule of *Apprendi*. Contrary to the conclusion reached by the majority, the only facts that the district court relied upon for its determination that Washington's prior conviction was a crime of violence were those facts recited in the indictment underlying that conviction. The district court explained that Application Note 1 to Section 4B1.2 instructs the sentencing court to examine the "conduct set forth . . . that is *expressly charged* . . . in the count in which the defendant was convicted." J.A. 120 (emphasis added). Consistent with the court's exclusive focus on the facts alleged in the indictment, the district court noted that it was unconstrained by *United States* v. *Harrison*, 58 F.3d 115 (4th Cir. 1995) because the "Court there did not have need or occasion to consider the meaning or application of the phrase, '*conduct expressly charged.*'" J.A. at 121 (emphasis added). The district court next explained, consistent with circuit precedent holding that "in assessing whether a particular offense satisfies the 'otherwise clause' of [§ 4B1.2(a)], a sentencing court must confine its factual inquiry to those facts charged in the indictment," *United States* v. *Dickerson*, 77 F.3d 774, 776 (4th Cir. 1996), that it would "look to the indictment itself . . . that is, the conduct expressly charged in the breaking and entering count of which the defendant was convicted." J.A. at 122. It then proceeded to read into the record the relevant portions of that indictment:

> That Gay S. Washington, Jr., . . . did unlawfully and feloniously break and enter a building of the City of Hurricane, a Municipal corporation, occupied by the Midwestern Drug and Violent Crime Task Force, with intent the goods and property of said Midwestern Drug and Violent Crime Task Force . . . then and there to steal, take, and carry away.

J.A. 80.

After setting forth the proper legal standard governing the application of section 4B1.2(a) and recounting the specific contents of the indictment, the district court concluded that Washington's prior conviction was a crime of violence, reasoning as follows:

> *By virtue of the conduct expressly charged in that indictment*, the Court concludes that the breaking and entering of a government-owned building to steal the goods and property of a drug and violent crime task force is conduct that, by its nature, presents a serious potential risk of physical injury to another.
>
> Based on common experience, it is reasonable to expect that quarters occupied by a drug and violent crime unit would contain both drugs and guns that are protected from theft; that, even if no one affiliated with the task force was present at the time of a breaking and entering into its quarters, one or more members or employees of the task force may show up there at any time of day or night in view of the oft-times clandestine and nocturnal nature of their work; and such persons would be armed.
>
> The act of breaking and entering such a facility is a reckless, dangerous act which, by its very nature, is fraught with serious potential for confrontation and risk of substantial physical harm to another.

J.A. 122-23 (emphasis added).

The majority concludes that the district court's determination is not subject to *Apprendi*'s prior conviction exception because the district court used its "common experience" to find facts beyond the scope of Washington's indictment that "echoed the extra-indictment information presented by the government," *ante* at 11-12, and because Washington "*contests*" the conclusion that his prior conviction "'involve[d] conduct that presented a serious potential risk of physical injury to another.'" *Ante* at 13 (emphasis added). The record actually confirms that the district court did not rely upon any extra-indictment facts. And neither the fact that the court referenced "common experience" nor the fact that Washington contests the court's crime of violence determination is sufficient to take the district court's determination outside the scope of *Apprendi*'s exception.

The majority's suggestion that the district court, *sub silentio*, relied on extra-indictment information about Washington's crime is simply

mistaken. The district court was *aware* of extra-indictment facts; the Government made certain representations pertaining to Washington's prior conviction during the June 17, 2003 hearing, J.A. 60-61, and it also submitted, as an exhibit to its sentencing memorandum, a police report describing Washington's prior conviction. J.A. 76-79. But the majority's suggestion that the district court's reference to its "common experience" merely masked its reliance on the Government's representations and the police report is nowhere supported in the record. Indeed, at the conclusion of the June 17, 2003 hearing, where the Government made representations about Washington's prior conviction, the district court asked the parties for a "review of the authorities to determine whether or not the Court simply looks to the crime as labeled or whether the Court looks to the crime as labeled coupled with the indictment or information, . . . or whether the Court looks to that as well as the specific circumstances of the particular case in order to determine whether the otherwise clause of the sentencing guideline is met." J.A. 65. And, as recounted above, at the August 29, 2003 hearing, where the district court imposed Washington's sentence, it is plain that the district court was aware that the relevant guideline application note required it to look only to the conduct expressly charged in the indictment and that those facts contained in the indictment were the sole factual bases for the imposed enhancement. *The extra-indictment information referenced by the majority was not even mentioned during this hearing and there is no evidence whatever in the record to suggest the district court relied on that information as the basis for the enhancement.**

Nor did the district court's reference to "common experience" and the conclusions drawn therefrom entail any factual findings subject to the rule of *Apprendi*. Rather, such merely constituted the district court's legal analysis of whether the indictment underlying Washing-

---

*The majority notes that the district court rested its "crime of violence" determination on "findings of fact [and conclusions of law] . . . made by a preponderance of the evidence." J.A. 165. But the district court's reference to "findings of fact" merely begs the question of whether the district court found *extra-indictment* facts. And, the district court plainly answered this question in the negative when it explained that Washington's prior crime was a crime of violence "*[b]y virtue of the conduct expressly charged in that indictment.*" J.A. 122.

ton's prior offense described a crime that was likely to present a serious risk of physical injury to another. The district court's decisional process was no different than if it had determined that the carrying of a gun during the course of a drug transaction constituted a crime of violence because "common experience" informs that physical injury is a foreseeable consequence of carrying a gun during such a transaction. Surely we would not hold that the court's determination in such context was an impermissible judicial finding of fact; no more so was the district court's determination in the present case impermissible. The district court made no findings as to the likelihood of violence in the specific context of the drug task force headquarters burglarized by Washington; it only drew the legal conclusion that violence is foreseeable when one burglarizes a building occupied by an organization such as a drug task force.

Because the district court's conclusion rested solely on the court's application of the definition in 4B1.2(a) to the facts expressly charged in the indictment, without any extra-indictment factual findings, under our circuit precedent the court's application of the "otherwise" portion of the definition of crime of violence to those facts resulted in a legal — as opposed to factual — conclusion subject to *de novo* review on appeal. *See United States* v. *Pierce*, 278 F.3d 282, 286 (4th Cir. 2002) (holding that "[t]he question" of whether a prior conviction is "an offense, which, 'by its nature, presents a serious potential risk of physical injury to another' . . . is a question of law that we review *de novo*"); *United States* v. *Dickerson*, 77 F.3d 774, 775 (4th Cir. 1996).

The majority also suggests that the "special circumstances identified by the Court in *Almendarez-Torres* are not present here," *ante* at 13, because Washington contests the conclusion that his prior conviction was a crime of violence, whereas Almendarez-Torres admitted that his prior convictions were aggravated felonies. But just as Almendarez-Torres did not dispute the facts relevant to the increase in his sentence, so too has Washington admitted the facts relevant to his enhancement. And this is all that matters.

Washington's prior conviction was an element, and thus included in the indictment, of the instant felon-in-possession offense, to which Washington pled guilty. J.A. 7; 46-49. Moreover, Washington does not dispute the accuracy of the facts contained in the indictment per-

taining to his prior conviction, J.A. 110, and, as established above, it is clear that the district court did not rely on extra-indictment factual findings. Therefore, Washington only challenges the district court's *legal* conclusion, namely whether breaking and entering a drug and violent crime task force "presents a serious risk of physical injury to another." U.S.S.G. § 4B1.2(a). Both features identified by *Apprendi* as pertinent to the prior conviction exception exist in this case: Washington's plea of guilty to the prior conviction was accompanied by "procedural safeguards," and, in the instant proceedings, Washington has admitted the fact of his prior conviction, inclusive of the facts revealed in the indictment pertaining to that conviction. *See Apprendi*, 530 U.S. at 488. As a consequence, there was no *Apprendi* error whatsoever in this case.

This determination is not altered by the plurality's conclusion in *Shepard* v. *United States*, 125 S. Ct. 1254 (2005). Contrary to the majority's suggestion, that case does not establish that *Apprendi*'s prior conviction exception is *per se* inapplicable to disputes "about a prior conviction." *Id.* at 1262. Rather, it merely establishes that such disputes must be resolved by reference to "*the charging document*, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 1263 (emphasis added). Here, consistent with this conclusion, the district court relied exclusively on the charging document pertaining to Washington's prior conviction.

Because the district court's application of the "otherwise" portion of section 4B1.2(a) to the conduct charged in Washington's prior indictment was correct, I would affirm its judgment.

II.

While the district court's imposition of a sentence enhancement did not infringe Washington's Sixth Amendment rights because the court did not enhance Washington's sentence on the basis of judicially-found facts, the district court's treatment of the federal sentencing guidelines as mandatory, and its imposition of Washington's sentence under the guidelines so understood, was error. *See United States* v. *Booker*, 125 S. Ct. 738 (2005).

Because Washington did not challenge the propriety of a mandatory sentencing guidelines regime in the district court, our review is under Federal Rule of Criminal Procedure 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). In order for Washington to prevail under Rule 52(b), "there must be an 'error' that is 'plain' and that 'affects substantial rights.'" *United States* v. *Olano*, 507 U.S. 725, 732 (1993). Because "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals," we "should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*.

Proper application of Rule 52(b) depends upon an accurate understanding of the error committed which, in turn, requires an accurate understanding of *Booker*.

In *Booker*, the Supreme Court held that judicial factfinding that results in an increase in an offender's sentence under the "Guidelines as written" — that is, the guidelines as "mandatory and binding on all judges" — violates the Sixth Amendment. *Booker*, 125 S. Ct. at 750 (Stevens, J.). The Court's remedy for this constitutional infirmity, however, was not the abolition of judicial factfinding; rather, the Court severed entirely "the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1)," *id*. at 756 (Breyer, J.). The effect of this severance was to render the Guidelines advisory *in all cases*, not merely those cases in which the trial court impermissibly found facts in violation of the Sixth Amendment. Indeed, the Court specifically rejected the Government's proposal to treat the guidelines as mandatory in cases in which there was no constitutionally impermissible judicial factfinding, on the grounds of the Court's conclusion that "Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others." *Id*. at 768 (Breyer, J.); *see also id*. at 769 (Breyer, J.) ("[W]e must apply today's holdings — both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act — to all cases on direct review.").

Because of the constitutional violation identified in *Booker* and the remedy ordered by the Court, *Booker* errors can take two forms.

First, it is error if the sentencing court (1) within a mandatory guideline regime (2) found facts that resulted in an increase in the offender's sentence beyond that which would have been supported by the jury's findings. This error, which results in a violation of the Sixth Amendment, is the type of error that occurred in Booker's case. As the Court explained, the district court's error was that it "applied the Guidelines as written and imposed a sentence higher than the maximum authorized solely by the jury's verdict." *Id.* at 769 (Breyer, J.). Justice Breyer's reference to the "Guidelines as written" confirms that the district court's treatment of the Guidelines as mandatory was necessarily part of the error that occurred in Booker's case. *See Booker*, 125 S. Ct. at 750 ("The *Guidelines as written*, however, *are not advisory; they are mandatory and binding on all judges*.") (emphasis added). *See also United States* v. *Gilchrist*, 2005 WL 599745 (4th Cir. March 8, 2005) (Luttig, J. concurring,) (concluding that *United States* v. *Hughes*, 396 F.3d 374 (4th Cir. 2005) fundamentally misidentified the foregoing *Booker* error "[b]y failing to recognize as error the district court's imposition of sentence on the assumption that the Guidelines were mandatory").

Second, because the Court held that the remedy for impermissible judicial factfinding in violation of the Sixth Amendment was the severance of the provision that made the Guidelines mandatory (rendering them in all cases advisory), it is also error if the sentencing court merely imposed a sentence under the Guidelines "as written," that is, as mandatory. This second type of error, which does not entail a violation of the Sixth Amendment because the district court did not find facts impermissibly, is the type of error that occurred in Washington's (and Fanfan's) case.

While it is possible for a sentencing court to have erred under *Booker* in either of these two respects, it must be understood that a court will not have erred in *either* respect provided that it sentenced the offender under the Guidelines as advisory only. And this even if the court increased the offender's sentence based upon facts beyond those found by the jury.

The district court in this case committed the second type of *Booker* error, and this type only. It erred by applying the "Guidelines as written," that is, as mandatory. And, even though *Booker* was decided

after the district court imposed Washington's sentence, that error is nonetheless deemed to have been "plain." *See Johnson* v. *United States*, 520 U.S. 461, 468 (1997) (finding that an error is plain "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal").

In order to prevail under Rule 52(b), Washington bears the burden of establishing that the district court's error affected his substantial rights. *See Olano*, 507 U.S. at 734 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."). An error affects substantial rights, when "the error actually affected the *outcome* of the proceedings." *United States* v. *Hastings*, 134 F.3d 235, 240 (4th Cir. 1998) (emphasis added). In the context of an error relating to the imposition of sentence, a defendant "must establish that [the imposed] sentence was longer than that to which he would otherwise be subject." *United States* v. *Angle*, 254 F.3d 514, 518 (4th Cir. 2001) (en banc). While the Supreme Court has variously articulated the requirement that a different result would have been likely or probable, *see United States* v. *Dominguez Benitez*, 124 S. Ct. 2333, 2342 (2004) (Scalia, J. concurring), it has recently suggested that an offender can establish prejudice with a "showing of a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *Id.* at 2339 (internal quotations omitted); *see also United States* v. *Antonakopoulos*, No. 03-1384, 2005 WL 407365, at *7-8 (1st Cir. 2005) (adopting the *Dominguez Benitez* "reasonable probability" standard for *Booker* claims).

As previously established, the district court erred when it imposed Washington's sentence pursuant to a mandatory sentencing guidelines regime, i.e., when it failed to treat the Guidelines as advisory. Thus, whether Washington's substantial rights were affected depends upon whether he can establish a reasonable probability that he would have received a lower sentence had the district court imposed that sentence pursuant to the advisory framework required by *Booker*.

Washington, however, has not claimed that he would have received a lower sentence under that framework and neither would the record support such a conclusion. Although the district court elected to sentence Washington at the bottom of the guideline range, it did not suggest that it was dissatisfied with this sentence. Indeed, the court noted

that Washington had been "involved . . . in a number of criminal matters." J.A. 126. Thus, even assuming it were possible under a different set of facts, under these facts Washington cannot possibly establish that the error affected his substantial rights. *Jones* v. *United States*, 527 U.S. 373, 390 (1999) ("Where the effect of an alleged error is . . . uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights.").

Even if Washington could establish that the error here affected his substantial rights, I would not, and we should not, notice that error. The Supreme Court has admonished that we should only notice "particularly egregious errors . . . that seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States* v. *Young*, 470 U.S. 1, 15 (1985). This is not such an error. Because there was no impermissible judicial factfinding, Washington's Sixth Amendment rights have not been infringed, and as such he is merely a collateral beneficiary of the remedy imposed by the Court in *Booker*. Moreover, Washington's sentence is in accordance with the Sentencing Guidelines and therefore presumptively reasonable.

The error here, in other words, is neither "particularly egregious" nor is it likely to undermine the "fairness, integrity or public reputation of judicial proceedings." Therefore, consistent with Justice Breyer's opinion for the Court in *Booker*, I would decline to notice the error here. *Booker*, 125 S. Ct. at 769 ("Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain error' test.").

### III.

Because Washington's sentence was imposed consistent with the requirements of the Sixth Amendment and because he is not entitled to relief under Rule 52(b), I would affirm Washington's sentence. I therefore dissent.