FOURTH DIVISION

December 29, 2005

No. 1-04-2605

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. ) No. 03CR8685

)

DANNY YANCY, ) The Honorable

) Dennis J. Porter, 

Defendant-Appellant.           ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant Danny Yancy was convicted of aggravated robbery.  He was sentenced to eight years in prison for his aggravated robbery conviction and five years in prison for violating his probation.  The court ordered defendant’s sentences to run concurrently.  On appeal, defendant contends: (1) that the trial court committed reversible error in admitting hearsay evidence that the quality assurance department agreed with the testifying forensic scientist’s conclusion that fingerprints found at the scene of the crime matched defendant’s; (2) that the trial court erred in sentencing him as a Class X offender pursuant to section 5-5-3(c)(8) of the Unified Code of Corrections (the Code) (730 ILCS 5/5-5-3(c)(8) (West 2002)), when his presentencing investigation report (PSI) did not show that he committed his first qualifying felony subsequent to the date required by the statute; and (3) that section 5-5-3(c)(8) of the Code deprived him of his constitutional right to a jury and due process rights. 

At trial, Henryka Waskowski testified that she owns a bar on West Irving Park Road in Chicago.  At 11 o’clock in the morning on March 5, 2002, Waskowski was in the bar, with the front door locked, cleaning up when a man she identified at trial as defendant knocked on the door.  Waskowski let defendant in and he sat down at the bar.  Waskowski observed that defendant had a crooked nose and short hair and that he was wearing a black jacket and a plaid shirt.  Waskowski sat down on a stool behind the bar and talked with defendant for about 40 minutes while he drank two beers.  No other patrons were in the bar.  Waskowski and defendant discussed defendant’s middle finger, which was deformed and would not bend.  After drinking his second beer, defendant asked Waskowski for a beer “on the house.”  Waskowski denied defendant’s request and indicated that it was time for him to leave.  Defendant went to the bathroom.  When he came out of the bathroom, defendant went behind the bar, told Waskowski that he had a gun and instructed her to open the register or he would kill her.  Waskowski testified that she did not see a gun but that defendant’s hand was in his pocket.  Waskowski pressed a hidden panic button and told defendant that the police were coming.  Defendant continued to demand money.  Waskowski opened the register and defendant took out approximately $150.  Defendant ordered Waskowski to go into the bathroom in the back of the bar.  Instead, Waskowski ran out of the front door of the bar.  On the sidewalk, she told a Chicago city worker what had happened.  She later recounted the events of the morning to the police.  When she went back into the bar, Waskowski observed that defendant had left his eyeglasses, a pack of cigarettes, a lighter and his beer bottle on the bar. 

Evidence technician Officer Presnell testified that on March 5, 2002, he searched, photographed, collected evidence and dusted for fingerprints at Waskowski’s bar.  Presnell lifted seven latent fingerprints, two from the pack of cigarettes, one from the cigarette lighter and four from the beer bottle.  Presnell also took Waskowski’s fingerprints for elimination purposes.  

Detective Lunsford was assigned to investigate the case.  He learned that fingerprints had been recovered from the scene and on April 15, 2002, requested that the prints be submitted to the Automated Fingerprint Identification System (AFIS), a database housing fingerprint cards of people arrested in Illinois, for comparison and identification.  

Anastasia Petruncio, a forensic scientist specializing in latent fingerprints, received the seven latent prints and identified four, one from the pack of cigarettes and three from the beer bottle, as suitable for comparison by AFIS.  AFIS compiled a list of 10 candidates whose prints were similar to the latent prints.  Petruncio compared defendant’s print card, taken in 2000, to the latent prints.  Between the card and the latent prints, Petruncio made more than five points of identification that indicated that the prints belonged to the same person.  She determined to a reasonable degree of certainty that the four latent prints were defendant’s.  Petruncio further testified that the quality assurance department randomly reidentified the prints and agreed with her conclusion. 

On October 25, 2002, Lunsford received a report from the Illinois crime lab that the latent prints had been matched to defendant’s AFIS card.  Defendant was arrested by fugitive apprehension unit Officer Dell on April 4, 2003.  Thereafter, Waskowski was asked to view a lineup at the police station.  She identified defendant out of the lineup as the man who had robbed her bar.  After she identified defendant, Waskowski asked to see his left hand.  Waskowski identified pictures of the lineup, defendant and defendant’s finger at trial. 

Fingerprint technician Stanley Mocaldo testified that on April 30, 2004, he took defendant’s fingerprints. 

Petruncio compared defendant’s 2000 print card to his print card taken in 2004.  She determined that the prints on the two cards belonged to the same person.  Petruncio did not compare the 2004 card to the latent prints. 

Defendant called responding Officer Ayalo, who testified that he interviewed Waskowski and indicated on his report that she had been drinking when the incident occurred.  However, on cross-examination, Ayalo testified that he had made a mistake on his report and that Waskowski had not been drinking. 

The court observed that, ordinarily, an identification by a single witness of the perpetrator of a crime that occurred over a year earlier would not be strong enough for a conviction.  However, in this case, the single witness’s testimony was corroborated by the fingerprint evidence.  The court further noted that the evidence of defendant’s guilt was overwhelming.  

Defendant filed a motion for a new trial, which was denied.  After hearing arguments in mitigation and aggravation, the court sentenced defendant to concurrent prison terms of eight years for aggravated robbery and five years for violation of probation.  

On appeal, defendant first contends that the trial court committed reversible error in admitting Petruncio’s testimony that the quality assurance department agreed with her identification of the latent prints.  Defendant contends that the testimony was inadmissible hearsay used to bolster Petruncio’s weak testimony.  The State first responds that, because he failed to raise it in his posttrial motion, defendant has waived this contention (see 
People v. Enoch
, 122 Ill. 2d 176, 190 (1988)), and observes that defendant has not alleged that the admission of the evidence was plain error (see 
People v. Herron
, 215 Ill. 2d 167, 187 (2005) (when issue is waived, defendant bears the burden of demonstrating that plain error occurred)).

We agree that defendant has waived this contention.  See 
People v. Howell
, 358 Ill. App. 3d 512 (2005).  Waiver aside, we find that, though Petruncio’s testimony that the quality assurance department agreed that the latent prints were defendant’s was inadmissible hearsay, any error committed in admitting the testimony was harmless beyond a reasonable doubt and reversal is not warranted.  

“Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and is generally inadmissible unless it falls within an exception.”  
People v. Lawler
, 142 Ill. 2d 548, 557 (1991).  Hearsay evidence is generally inadmissible because of the lack of an opportunity to cross-examine the declarant.  
People v. Jura
, 352 Ill. App. 3d 1080, 1085 (2004).  “[T]estimony by a third party as to statements made by another nontestifying party identifying an accused as the perpetrator of a crime constitutes hearsay testimony and is inadmissible.”  
People v. Lopez
, 152 Ill. App. 3d 667, 672 (1987)
. 

The State argues that the challenged testimony was not offered for the truth of the matter asserted and was instead offered “to show that Ms. Petruncio’s identification was not affected by human error.”  Specifically, the State points to the fact that, during cross-examination, Petruncio conceded that there is a risk of human error in identifying fingerprints. Thereafter, during redirect, Petruncio testified that in order to protect against human error, every identification is reviewed by a more experienced forensic scientist. She further testified that the quality assurance department randomly reidentifies prints, that it reidentified the prints in this case, and that “[t]he quality assurance department agreed with [her] finding.” While Petruncio’s redirect testimony that each identification was reviewed by a more experienced scientist and by the Quality Assurance Department was offered to show a minimized risk of human error and also alerted the trier of fact to the process by which fingerprints are identified and verified, contrary to the State’s assertion, her testimony that the quality assurance department agreed with her identification was offered to prove the truth of the matter that it asserted: that the quality assurance department also found that the latent prints were defendant’s.  Accordingly, we find that the testimony was clearly improper hearsay.  See 
People v. Smith
, 256 Ill. App. 3d 610, 615 (1994) (examiner’s testimony that another examiner “verified her fingerprint identification was clearly hearsay”).  

Nonetheless, the admission of hearsay identification testimony “is harmless error when it is merely cumulative or is supported by a positive identification and other corroborative circumstances.”  
Smith
, 256 Ill. App. 3d at 615, citing 
People v. Mitchell
, 200 Ill. App. 3d 969, 975 (1990).  Moreover, admission of hearsay evidence is harmless and does not warrant reversal if there is no reasonable probability that the verdict would have been different had the hearsay been excluded.  
People v. Pineda
, 349 Ill. App. 3d 815, 822 (2004), citing 
People v. Soto
, 342 Ill. App. 3d 1005, 1014 (2003).  Put another way, the admission of hearsay evidence does not require reversal if it is harmless beyond a reasonable doubt.  
People v. Thompson
, 349 Ill. App. 3d 587, 594 (2004).  Notably, this case was tried before the bench.  “Unlike a jury, a trial judge in a bench trial is presumed to know the law and to follow it and ‘this presumption may only be rebutted when the record affirmatively shows otherwise.’ ” 
People v. Thorne
, 352 Ill. App. 3d 1062, 1078 (2004), quoting 
People v. Mandic
, 325 Ill. App. 3d 544, 546 (2001). 

Defendant analogizes this case to 
Smith
.  In 
Smith
, during the defendant’s trial for armed robbery, a fingerprint examiner testified that she had identified a latent fingerprint found at the scene of the crime as defendant’s.  The examiner testified that her identification was checked for accuracy by another fingerprint examiner who agreed with her conclusion.  On appeal, the defendant contended that the trial court had erred in permitting the State to present inadmissible hearsay evidence.  The State argued that reversal was not warranted because the hearsay testimony was merely cumulative and the evidence of the defendant’s guilt was overwhelming. The court disagreed with the State’s assessment of the evidence.  First, the court noted that the evidence of the defendant’s guilt was not overwhelming.  Two witnesses to the robbery identified the defendant as the perpetrator at trial.  However, one of them had previously misidentified the defendant during a photographic lineup.  Furthermore, the description given by both witnesses to police officers immediately following the robbery greatly differed from the defendant’s physical appearance at trial.  Moreover, two alibi witnesses testified on defendant’s behalf at trial.  Second, the court observed that the hearsay testimony regarding the second examiner’s identification of the defendant was not merely cumulative of the first examiner’s testimony.  The jury’s notes and questions to the court during deliberation showed that it was “acutely interested in the fingerprint evidence in general and in [the second examiner’s] ‘testimony’ in particular.”  
Smith
, 256 Ill. App. 3d at 616.  Finally, the court found that the prosecutor had “compounded the effect of improper hearsay testimony by emphasizing it during closing argument” in which the prosecutor “cast blame on the defendant for not rebutting the [first examiner’s testimony] by calling [the second examiner].”  
Smith
, 256 Ill. App. 3d at 616.  The court held that the errors denied the defendant a fair trial and created a reasonable possibility that the verdict would have been different if they had not occurred.  Accordingly, it reversed and remanded the case for a new trial.  

Clearly, the case at bar is distinguishable from 
Smith
.  Perhaps most importantly, while 
Smith
 was tried before a jury, the case at bar was a bench trial.  Here, defendant has simply failed to point to evidence on the record to overcome our presumption that the trial judge followed the law and disregarded the hearsay testimony.  While the court found the latent prints’ identification as defendant’s evidence supporting a finding of guilt, it did not mention or indicate in any way that its finding was influenced by the quality assurance department’s identification.  Moreover, the substantive facts of the case at bar are distinguishable from 
Smith
.  In this case, unlike in 
Smith
, the evidence of defendant’s guilt was overwhelming.  Waskowski sat across a bar from defendant and talked to him for 40 minutes immediately prior to the robbery.  Waskowski’s description of defendant to the police on the day of the robbery was consistent with the lineup pictures of defendant that were admitted into evidence.  Furthermore, Waskowski identified defendant out of a lineup not only by his face but also by his crooked finger, which she had discussed with defendant on the day of the robbery.  Waskowski also identified defendant at trial.  This case is also unlike 
Smith
 because here the challenged testimony was cumulative.  Petruncio testified, subject to cross-examination, that she identified the latent prints found at the scene of the crime as defendant’s.  Additionally, the prosecutor in this case made
 no mention of the hearsay testimony during closing.  Accordingly, we refuse to reverse defendant’s conviction on this basis.

Defendant next contends that the trial court erred in sentencing him as a Class X offender pursuant to section 5-5-3(c)(8) of the Code.  Section 5-5-3(c)(8) provides:

“When a defendant, over the age of 21 years, is convicted of a Class 1 or a Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class 2 or greater Class felony and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender.  This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction of the first; and (3) the third felony was committed after conviction of the second.”  730 ILCS 5/5-5-3(c)(8) (West 2002). 

We will first address defendant’s contention that, pursuant to 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and the United State’s Supreme Court’s recent decision in 
Shepard v. United States
, 544 U.S. __, 161 L. Ed. 2d 205, 125 S. Ct. 1254 (2005), his jury trial and due process rights were violated when the facts required for imposition of his enhanced sentence by section 5-5-3(c)(8), that he was over the age of 21, that his first prior felony was committed prior to the effective date of the Act of 1977, that his second felony was committed after conviction of his first and that his third felony was committed after conviction of his second, were not submitted to a jury or proven beyond a reasonable doubt.  We disagree with the State’s response that defendant’s failure to raise this contention in the trial court results in its waiver because “a party may challenge the constitutionality of a statute at any time.”  
People v. Wagener
, 196 Ill. 2d 269, 279 (2001).   However, because defendant waived his right to a jury prior to trial and was found guilty by the bench, we find that any assertion that 
Apprendi
 and 
Shepard
 afford defendant the right to have his age and sequence of his convictions proven to a jury has been waived.  See 
People v. Smith
, 337 Ill. App. 3d 175, 177 (2003).  Accordingly, we will vacate defendant’s Class X sentence only if his age and the timing of his convictions should have been proven beyond a reasonable doubt.  

In 
Apprendi
, the Supreme Court considered the issue of “whether the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense *** be made by a jury on the basis of proof beyond a reasonable doubt.”  
Apprendi
, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351.  The Court found that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  The 
Apprendi
 Court articulated several reasons for excepting recidivism statutes from its holding, “including the fact that procedural safeguards enhance the validity of any prior conviction, recidivism is not an essential element of the underlying criminal offense and recidivism does not relate to the commission of the underlying offense.”  
People v. Lathon
, 317 Ill. App. 3d 573, 585 (2000), citing 
Apprendi
, 530 U.S. at 494-95, 147 L. Ed. 2d at 457-58, 120 S. Ct. at 2365-66.  

The 
Apprendi
 Court discussed 
Almendarez-Torres v. United States
, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), in which the Court found that a federal statute authorizing a trial judge to enhance defendant’s sentence based on a prior conviction did not violate the defendant’s constitutional rights.  Though the 
Apprendi
 Court noted that it was arguable that 
Almendarez-Torres
 was incorrectly decided: 

“
Apprendi
’s discussion of 
Almendarez-Torres
 concludes with the 
Apprendi
 Court, based on a reexamination of case law and history, affirmatively confirming its opinion, previously expressed in [
Jones v. United States
, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S. Ct. 1215 (1999)], that prior convictions are an exception to the holding that any fact which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.”  
People v. Smith
, 338 Ill. App. 3d 555, 559 (2003), citing 
Apprendi
, 530 U.S. at 489-90, 147 L. Ed. 2d at 454-66, 120 S. Ct. at 2362-63. 

Since 
Apprendi
 was decided, this court has entertained repeated allegations, like defendant’s, that section 5-5-3(c)(8) of the Code is unconstitutional because it requires enhancement of a defendant’s sentence based on the defendant’s age and the timing, degree, number and sequence of the defendant’s prior convictions, which are not submitted to a jury or proven beyond a reasonable doubt.  We have repeatedly found section 5-5-3(c)(8) to be constitutional under the recidivism exception in 
Apprendi
.  See, 
e.g.
, 
People v. Lundy
, 334 Ill. App. 3d 819 (2002); 
People v. Young
, 334 Ill. App. 3d 785 (2002); 
People v. Wallace
, 331 Ill. App. 3d 822 (2002); 
People v. Echols
, 325 Ill. App. 3d 515 (2001); 
People v. Givens
, 319 Ill. App. 3d 910 (2001); 
People v. Dixon
, 319 Ill. App. 3d 881 (2001); 
People v. Roberts
, 318 Ill. App. 3d 719 (2000); 
People v. Ramos
, 318 Ill. App. 3d 181 (2000);
 People v. Lathon
, 317 Ill. App. 3d 573 (2000)
. 
 We have identified four reasons for the recidivism exception. 

“First, historically, recidivism has been ‘a traditional, if not the most traditional, basis for a sentencing court’s increasing an offender’s sentence.’ [Citations.] Second, the prior convictions must themselves have been established through procedures that complied with due process. Thus, the rights of fair notice, proof beyond a reasonable doubt, and a jury trial inherent in due process have already been met with regard to these convictions. [Citations.] Third, prior convictions are ‘highly verifiable matters of record which need not be subject to jury inquiry.’ [Citations.] Fourth, making prior convictions an element of the offense would force the State to put such evidence before the jury, which would severely prejudice the defendant.”  
People v. Watson
, 322 Ill. App. 3d 164, 167 (2001).  

We have additionally upheld the “the minimum age and other ancillary elements of section 5-5-3(c)(8), finding that they are sufficiently intertwined with recidivism and distinct from the elements of the underlying offense to fall under the recidivism exception recognized in 
Apprendi
.”  
Smith
, 338 Ill. App. 3d at 561; 
People v. Jones
, 322 Ill. App. 3d 236, 243 (2001); 
People v. Dunn
, 326 Ill. App. 3d 281, 289 (2001); 
People v. Givens
, 319 Ill. App. 3d at 914; 
Dixon
, 319 Ill. App. 3d at 885. 

The Supreme Court recently revisited issues raised by 
Apprendi
 in 
Shepard
.  In
 
Shepard
, the defendant pled guilty to unlawful possession of a firearm by a felon.  At sentencing, the Government argued that the defendant’s sentence should be extended under the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e) (2000)), which provided an extended sentence for defendants convicted of possession of a firearm after having been convicted of three prior serious drug offenses or violent felonies.  Under the ACCA, burglary committed in an enclosed space or building, or “generic burglary,” qualified as a violent felony but burglary committed in a boat or motor vehicle did not.  The defendant had previously pled guilty to burglary four times under Massachusetts burglary statutes that did not differentiate between generic burglary and burglary committed in a boat or motor vehicle.  The issue before the United States Supreme Court was “whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary.”  
Shepard
, 544 U.S. at __, 161 L. Ed. 2d at 211, 125 S. Ct. at 1257.  The Court noted that the lower courts were correct in finding that guilty pleas may establish the ACCA predicate offenses and that
 
Taylor v. United States
, 495 U.S. 575, 109 L. Ed. 2d 607, 110 S. Ct. 2143 (1990), controls the identification of generic burglary convictions following convictions on verdicts as well as pleas. In 
Taylor
, the Supreme Court had held that in sentencing a defendant under the ACCA, a court could look to the statutory elements, charging documents and jury instructions of the prior convictions to determine whether those convictions were for generic burglary.  In 
Shepard
, because the defendant had entered guilty pleas to his earlier convictions, jury instructions were not available to assist the district court in determining whether the guilty pleas were to generic burglary.  The Court determined:

“In cases tried without a jury, the closest analogs to jury instructions would be a bench-trial judge’s formal rulings of law and findings of fact, and in pleaded cases they would be the statement of factual basis for the charge, [citation], shown by transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea.”  
Shepard
, 544 U.S. at __, 161 L. Ed. 2d at 214, 125 S. Ct. at 1259-60.  

The Court rejected the government’s argument that documents submitted to the lower court even prior to charges, such as police reports and complaint applications, should also be considered, finding that to so hold would be to ease away from the 
Taylor
 holding and that there is insufficient justification for upsetting 
Taylor
’s precedent.  Accordingly, the Court held:

“[E]nquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.”  
Shepard
, 544 U.S. at __, 161 L. Ed. 2d at 218, 125 S. Ct. at 1263.  

Writing for a plurality of the Court, Justice Souter articulated a second justification for the Court’s holding that a sentencing court could look only to a limited category of evidence in assessing prior convictions obtained by guilty pleas: constitutional concerns about the defendant’s right to a jury trial.  Justice Souter noted that the 
Taylor
 Court had limited the evidence to which a sentencing court could look to determine whether a prior conviction was generic because to allow the sentencing court to review the entire record of the prior convictions could abridge a defendant’s right to a jury trial.  
Taylor
, therefore, anticipated the rule later articulated in 
Jones
 and 
Apprendi
 that any fact, other than a prior conviction, sufficient to extend a defendant’s sentence must be found by a jury “in the absence of any waiver of rights by the defendant.”  
Shepard
, 544 U.S. at __, 161 L. Ed. 2d at 217, 125 S. Ct. at 1262.  Justice Souter observed that in a nongeneric State, such as Massachusetts, because “the fact necessary to show a generic crime is not established by the record of conviction as it would be in a generic State,” in order to protect the defendant’s right to a jury trial, it is necessary to limit the scope of judicial factfinding on the disputed generic character of a prior plea, as the 
Shepard
 and 
Taylor
 Courts had done.  
Shepard
, 544 U.S. at __, 161 L. Ed. 2d at 217, 125 S. Ct. at 1262.  

Justice Souter further observed that in the case before the Court, the record was silent on whether the defendant’s prior convictions were generic burglaries because there were no plea agreements or recorded colloquies in which the defendant admitted the generic fact.  Justice Souter wrote:

“[T]he Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury’s finding of any disputed fact essential to increase the ceiling of a potential sentence.  While the disputed fact here can be described as a fact about prior convictions, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to 
Jones
 and 
Apprendi
, to say that 
Almendarez-Torres
 clearly authorizes a judge to resolve the dispute.”  
Shepard
, 544 U.S. at __, 161 L. Ed. 2d at 217, 125 S. Ct. at 1262. 

The Fourth Circuit Court of Appeals recently succinctly articulated the holding and effect of the 
Shepard
 plurality, noting:

“[The 
Shepard
 Court] prohibited judges from resolving a ‘disputed fact ... about a prior conviction,’ [citation] if doing so required data – like that found in police reports – that was not inherent in that prior conviction.  At the same time, however, 
Shepard
 explicitly affirmed that the prior conviction exception remained good law. [Citation.] To this end, the Court authorized judges to rely on a variety of conclusive court documents when determining the nature of a prior conviction.  ***

***

In short, the ‘fact of a prior conviction’ remains a valid enhancement even when not found by the jury.”  
United States v. Thompson
, 421 F. 3d 278, 281-82 (4th
 Cir. 2005). 

The 
Thompson
 court further concluded, and we agree, that the fact of a prior conviction may not be severed from its essential components and that 
Shepard
, in describing the documents that 
could
 be used by a sentencing court to determine the nature of a prior conviction, “reinforced the notion that some facts are so inherent in a conviction that they need not be found by a jury.”  
Thompson
, 421 F.3d at 282.  Specifically, the court held that the statute which was violated and the fact that prior convictions were committed on different occasions, as is required for the imposition of an enhanced sentence under the ACCA, were inherent in the convictions themselves and were therefore “not among the kind of facts extraneous to a conviction that *** 
Shepard
 requires a jury to find.”  
Thompson
, 421 F. 3d at 286; see also 
United States v. Wilson
, 406 F.3d 1074 (8th
 Cir. 2005) (rejecting the claim that the question of whether prior convictions occurred on separate occasions should be determined by a jury).  
Thompson
 distinguished facts inherent in a conviction from facts extraneous to a conviction that required submission to a jury, such as those examined in 
United States v. Washington
, 404 F.3d 834 (4th
 Cir. 2005), in which sentencing guidelines required a finding that the prior conviction had “ ‘involve[d] conduct that present[ed] a serious potential risk of physical injury to another’ ” in order to enhance the defendant’s sentence.  
Washington
, 404 F.3d at 836, quoting United States Sentencing Guidelines Manual § 4B1.2(a)(2) (2003).  

This court addressed the constitutionality of section 5-5-3(c)(8) in 
People v. Rivera
, No. 1-04-2326 (December 16, 2005).  In 
Rivera
, we found that 
Shepard
’s “holding was narrowly drawn to apply to scenarios that required findings of fact related to the elements of an underlying crime that would make such crimes predicate offenses for the purposes of enhancing a sentence.”  
Rivera
, slip op. at 9.  Accordingly, we held that, because the facts required for an enhanced sentence under section 5-5-3(c)(8) were distinct from the underlying offense and were intertwined with recidivism, the 
Apprendi
 exception applied.  

Notably, 
Shepard
 does
 specifically discuss the requirement of 
Apprendi
 that, other than the fact of a prior conviction, facts which enhance a sentence should be proven beyond a reasonable doubt.  However, we believe that implicit in the 
Shepard
 discussion is the fact that a jury would be required to find enhancing facts beyond a reasonable doubt.  We agree with 
Thompson
’s and 
Rivera
’s conclusion that after 
Shepard
, there remains a recidivism exception to the rule articulated in 
Apprendi
.  Our reasons for excepting recidivism from the 
Apprendi
 rule still ring true.  Recidivism is a traditional basis for imposing an enhanced sentence.  Moreover, the recidivism exception remains sound because a defendant’s previous convictions were themselves established through procedures that complied with due process.  Additionally, a defendant’s convictions and facts intrinsic thereof are highly verifiable.  Finally, to abolish the recidivism exception would prejudice a defendant because, during his trial, the jury would be presented with evidence of his prior convictions. 

We further find that, under 
Shepard
, the “fact of a prior conviction,” which, pursuant to 
Apprendi
 and 
Shepard
, may be found by a sentencing court and need not be proven beyond a reasonable doubt, includes facts intrinsic to the conviction.  Accordingly, 
Shepard
 does not compel us to disturb our previous holding that section 5-5-3(c)(8) of the Code is constitutional because the facts of the defendant’s age and the dates of commission and sequence of his convictions are inherent in the convictions themselves and need not be proven beyond a reasonable doubt.  
Jones
, 322 Ill. App. 3d at 243; 
Smith
, 338 Ill. App. 3d at 561; 
Dunn
, 326 Ill. App. 3d at 289
; 
Givens
, 319 Ill. App. 3d at 914; 
Dixon
, 319 Ill. App. 3d at 885
.  Moreover, as in 
Thompson
, we hold that, in finding that an enhanced sentence was warranted, the sentencing court was entitled to rely on evidence of the above facts in defendant’s PSI because it “bear[s] the earmarks of derivation from 
Shepard
-approved sources such as the indictments and *** judgments from [defendant’s] prior convictions.”  
Thompson
, 421 F.3d at 285; see also 
Rivera
, slip op. at 11 (“a presentence report, like the one in the instant case, is generally a reliable source for the purpose of inquiring into a defendant’s criminal history”).   Therefore, we refuse to vacate defendant’s sentence on the basis that the requirements of section 5-5-3(c)(8) of the Code were not proven beyond a reasonable doubt. 

Finally, defendant contends that the trial court erred in sentencing him as a Class X offender because there was no evidence submitted to the sentencing court that he committed his first burglary after the effective date of the Act of 1977, as required by section 5-5-3(c)(8) of the Code.  The parties agree that the effective date of the amendatory Act of 1977 is February 1, 1978.  See Pub. Act 80-1099, eff. February 1, 1978.  Defendant further concedes that if the burglary of which he was convicted on April 24, 1978, were committed subsequent to February 1, 1978, the trial court would be correct to sentence him in the present case as a Class X offender.  The State notes that, contrary to defendant’s assertion, both defendant’s Illinois State Police Criminal History Report and Federal Criminal History Report, which were attached to his PSI, list the date of the commission of the offense at issue as April 23, 1978, and indicate that defendant entered a guilty plea the following day.  

We acknowledge that is certainly unusual that defendant’s conviction was obtained only one day after the offense was committed as the criminal history reports represent.  Nonetheless, as discussed above, even after 
Apprendi
 and 
Shepard
, the State was not constitutionally required to prove that defendant was eligible for Class X sentencing beyond a reasonable doubt.  See also 
People v. Williams
, 149 Ill. 2d 467 (1992) (holding that the Code does not require the State to prove defendant’s eligibility for Class X sentencing beyond a reasonable doubt).  Moreover, because defendant did not object to the imposition of a Class X sentence during sentencing or in a postsentencing motion, and, in fact, acquiesced to his Class X status, he has waived this contention.  
Williams
, 149 Ill. 2d at 493; 
People v. Villanueva
, 231 Ill. App. 3d 754, 763-64 (1992).  

For the foregoing reasons, we affirm the judgment of the trial court. 

Affirmed. 

CAMPBELL and MURPHY, J.J., concur.