2021 IL App (1st) 191883-U

No. 1-19-1883

Order filed March 19, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 60032 |
| | ) | |
| JAIME NIEVES, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for aggravated battery. The evidence established each element of the offense beyond a reasonable doubt, and the circuit court did not err in imposing an extended-term sentence of six years' imprisonment.

¶ 2    Following a bench trial, defendant Jaime Nieves was convicted of aggravated battery with a deadly weapon (720 ILCS 5/12-3.05(f)(1) (West 2018)) and sentenced to an extended term of six years' imprisonment. On appeal, defendant argues (1) his conviction should be

reversed because the State failed to prove beyond a reasonable doubt that he intended to attack his brother, he was not acting in self-defense, and the knife he used was a deadly weapon; and (2) his case should be remanded for a new sentencing hearing because the court "rested its reasoning on a faulty basis" in sentencing him to an extended term, the sentence was overly harsh given the slight injury to the victim, and the sentence "appeared to be an attempt to punish [defendant] for his past criminal history rather than the charge that was actually before the trial court." We affirm.

¶ 3 Defendant was charged with two counts of aggravated battery to Santiago Nieves (victim was a person over age 60) (count I) and Joel Nieves (with a deadly weapon: a knife) (count II) stemming from events which took place on January 11, 2019.[1] Before trial, in admonishing defendant regarding his right to a jury trial, the court informed him of the charges, including the fact that both counts were Class 3 felonies, punishable by two to five years imprisonment. The court asked if he understood the charges and possible penalties, and he answered in the affirmative. The State also informed the court that it had extended defendant an offer of probation with drug treatment on a misdemeanor battery. The court again asked defendant if he understood the possible penalties associated with his Class 3 felony charges, and the offer the State was making to him. Defendant indicated he understood and declined the offer.

¶ 4 At trial, Santiago testified that his birthday was July 25, 1938, and on the date of trial he was "going to be 81." On January 11, 2019, Santiago lived at a residence on North Kilbourn Avenue in Chicago with his wife and son Jaime, whom he identified in court as defendant. On

---

[1] Because the defendant and the two victims all have the same last name, we will refer to the witnesses by their first names.

that date, at about 11 p.m., Santiago had just arrived home from church and defendant was in his bedroom.

¶ 5    When Santiago arrived at the residence, he smelled marijuana. Santiago and his wife had previously established a rule that defendant could not smoke inside the house. Defendant left his bedroom to walk to the kitchen, and, as he did so, Santiago questioned him about the marijuana. Defendant ignored Santiago, so Santiago "put [his] hands behind [defendant] and his back and [he] pushed him." Defendant continued to ignore Santiago, so Santiago slapped him. Defendant then, with his open hand, pushed Santiago, who fell onto defendant's bed. Santiago then called his other son, Joel.

¶ 6    Joel arrived five to six minutes later. While waiting for Joel, Santiago sat down in the living room because he began to feel "a little sick." Santiago explained that, a year earlier, he had bypass surgery on his heart. When Joel arrived, defendant was "very calm" and Joel "scolded" defendant. Santiago saw Joel push defendant, after which defendant went to his room and returned with a knife. Santiago testified that he "did not see [the knife] very well." Santiago did not see Joel choking defendant. Santiago explained that defendant seemed to want to attack Joel, who "put a lock on him and dropped him to the floor." Joel called the police, who arrived later.

¶ 7    On cross-examination, Santiago stated the argument he had with defendant occurred in the doorway of defendant's bedroom. Santiago did not go into the room.

¶ 8    Joel testified that on January 11, 2019, he was out with a friend when he received a call from his father. His father lived at a residence on North Kilbourn Avenue with Joel's mother and defendant, Joel's brother. Defendant lived with their parents since August 2018. The conditions for defendant living with their parents were "[n]o drug use, no alcohol use," and no smoking in

the house. After Joel received the phone call, he "went straight" to his parents' house. Joel's father was "shaky" when he arrived at the house.

¶ 9    When defendant came out of his room, Joel began yelling at him and defendant responded by "cursing" loudly and telling Joel "f*** you." Joel and defendant then "put [their] hands on each other," after which defendant "disappeared" into his bedroom for a few seconds. Joel described how they put hands on each other as "almost like pushing" and a "back and forth push," but was "not 100 percent sure." They did not punch one another. Joel did not place defendant into a headlock initially, nor did defendant place Joel in a headlock. When defendant exited his room, he was holding a kitchen knife which was about 12 inches long. Joel reached for defendant's hand holding the knife, and defendant "lung[ed]" at Joel's stomach area with the knife, making contact. Joel was wearing a cotton "hoody" with a t-shirt underneath. Defendant lunged toward Joel "three or four times" and made contact once. Joel continued to grab defendant's hands and told him to let go of the knife. Defendant continued to say "f*** you," and "you want to f*** with me." Joel eventually got the knife away by grabbing defendant's wrist. Joel tackled defendant to the ground, held him down, and subdued him. Joel's ex-girlfriend and the upstairs neighbor were also present. The neighbor helped Joel hold down defendant, and Joel's ex-girlfriend called the police.

¶ 10    Joel identified photographs of himself, which he indicated were true and accurate representations of what he looked like when the incident occurred.[2] According to Joel, one photograph depicted him wearing a "sweater" which he was wearing when the incident occurred. A second photograph depicted his stomach which showed a "scar" from where defendant "got

_____

[2] None of the exhibits admitted into evidence were made a part of the record on appeal.

[him] with the knife" during the incident. The cut he received was not on his stomach before the incident. The police officer recovered the knife from the neighbor when he arrived.

¶ 11    On cross-examination, Joel stated he arrived 10 to 15 minutes after he received the phone call from his father, and was "[c]oncerned" when he arrived at the house. When Joel arrived, he spoke with his father about defendant, and during that time defendant came out of his bedroom. Joel and defendant "pushed each other," after Joel "went at him." Joel did not place his hands on defendant first. Joel did not choke defendant. Defendant was in his bedroom for a "few seconds" before exiting with the knife and "charging" Joel. Joel grabbed defendant's hand, and defendant lunged with the knife at Joel's stomach. Defendant did not attack his father or mother. The neighbor helped Joel hold defendant down with his stomach to the ground when the police arrived. Joel explained that he used one of his arms to hold down one of defendant's arms and had his other arm around defendant's neck. Joel did not see the knife when the police officer arrived, so he did not know whether there was blood on it.

¶ 12    On redirect examination, Joel testified that the injury he sustained had "[m]inor blood." Joel did not know whether defendant was trying to flee but "wasn't going to let him get away."

¶ 13    Chicago police officer Anthony Castro testified that he and his partner responded to a domestic disturbance call at the scene. When they walked into the apartment, Castro saw two men, one of whom was Joel, holding down another man, identified as defendant. Defendant was on the floor, and the men were on top of him, holding him so he could not move. One man was holding an arm on defendant's back as he lay on his stomach, and Joel "had his arms on his back." Castro did not see Joel's hand on defendant's neck. The officers recovered a knife, and Castro identified a photograph of the recovered knife. Castro did not remember whether it was

Joel or the other man who handed him the knife. Castro saw a "laceration" on Joel's "belly," and identified the laceration in the photograph exhibit previously shown to Joel. On cross-examination, Castro stated he did not see blood on the knife. The three photographs were admitted into evidence.

¶ 14    The court granted defendant's motion for a directed verdict with respect to the aggravated battery charge against Santiago, but denied it for the aggravated battery count against Joel.

¶ 15    Defendant testified that on January 11, 2019, he was at home in his room when his brother arrived at the house. Defendant heard Joel and his father talking, but did not hear what they were saying. Defendant then left his room to "state [his] case." When defendant exited his bedroom, his mother, brother, his brother's girlfriend, and father were in the room. Joel asked defendant "did you push my father," and defendant said yes. Joel did not let defendant "finish," and pushed him to the floor. Joel then "came at" defendant and pushed him, causing defendant to fall to the floor. Joel "lunged" at defendant and tried to put his hands on him as if he were attempting to choke him.

¶ 16    Defendant got up from under him and went to his room and "grabbed a knife" which he had taken from the kitchen, along with an orange, after the confrontation with his father. Defendant then told Joel to "come at me now." When defendant made that statement, Joel stepped back into the living room, and their mother and father stood in front of defendant and held his right arm. Joel was right behind defendant along with the upstairs neighbor who told him to give him the knife. After considering it for a few seconds, defendant gave the knife to the neighbor, who placed it inside the china cabinet.

¶ 17 Defendant's parents released his arm, and Joel grabbed defendant's shirt and "lunge[d]" him to the floor, so that his stomach was on the floor. The neighbor pinned defendant's legs and Joel grabbed him in a headlock and choked him. They were still in those positions when the police arrived. At no time did defendant swing the knife at Joel.

¶ 18 Defendant argued in closing that he was acting in self defense by using the knife, because Joel had attacked him. The circuit court found defendant guilty of aggravated battery with a deadly weapon, a knife (count II). In ruling, the court noted that it did not find he was "in fear" of his life "or that Joel was an aggressor in a way which would make [defendant] go get a knife and then come back out to lunge at [Joel]." The court believed Joel's testimony when he said that after the initial pushing, defendant retrieved a knife and lunged at him with it, causing Joel to receive a slight injury.

¶ 19 The court denied defendant's motion for a new trial, and the case proceeded to sentencing. Defendant's presentence investigation report (PSI) indicated that he had 11 previous convictions: attempt burglary (2018), burglary (2008 [two cases], 2003, 1998, 1997), residential burglary (2003, 1998), and theft (1996 [two cases], 1988). His sentences for those convictions ranged from "two days time considered served" for the 1996 theft to an aggregate term of 16 years' imprisonment for the 2008 burglaries. Eight of defendant's prior convictions were for felonies, including attempt burglary, burglary, and residential burglary. The parties presented extensive arguments regarding whether the defendant was eligible for extended term sentencing due to his background and regarding defendant's family history, drug addiction, and home life.

¶ 20 In announcing sentence, the court stated that it listened to defendant's father and brother testify, and, based on all of the facts and circumstances, found him not guilty of the aggravated

battery to his father but guilty of the aggravated battery to his brother. The court emphasized that defendant retrieved a knife when he was fighting his brother. The court pointed out that defendant was "in front of a judge numerous times before" and, although he characterized himself as a petty thief, the court disagreed given the convictions in his background, which included residential burglary convictions. The court noted that the facts of the case were "somewhat" mitigating for defendant, but based on his background, and his age of 48, defendant had "chance after chance" regarding his drug addiction. The court emphasized the number of convictions in defendant's background, including eight prior convictions for burglary, residential burglary, and attempt burglary. It ultimately indicated it found an extended-sentence appropriate and imposed a term of six years' imprisonment. The court denied defendant's motion to reconsider sentence.

¶ 21    On appeal, the defendant is represented by *pro bono* counsel through the Volunteer *Pro Bono* Program for Criminal Appeals and we express thanks for defense counsel's participation in this program. We first address defendant's challenge to the sufficiency of the evidence to sustain his conviction.

¶ 22    We review a challenge to the sufficiency of the evidence to sustain a conviction to determine "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not retry the evidence or substitute its

judgment for that of the trier of fact on issues involving the weight of the evidence or credibility of witnesses. *Id.* A reviewing court will not reverse a criminal conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). Here, the evidence was sufficient to support defendant's conviction.

¶ 23    To sustain defendant's conviction for aggravated battery as charged in this case, the State had to prove beyond a reasonable doubt that he knowingly and without legal justification caused bodily harm to Joel and, in doing so, knowingly used a deadly weapon other than a firearm. 720 ILCS 5/12-3.05(f)(1) (West 2018); 720 ILCS 5/12-3(a) (West 2018).

¶ 24    Defendant argues that his conviction should be reversed because the State failed to prove beyond a reasonable doubt that he battered Joel, where the record showed that he lacked any intent to attack Joel, he was acting in self-defense, and the court made no finding that the knife he used was a deadly weapon.

¶ 25    Viewing the evidence in a light most favorable to the State, we find a rational trier of fact could find beyond a reasonable doubt that defendant committed aggravated battery when he "lunged" at Joel with a kitchen knife. Santiago and Joel both testified that when Joel arrived at the Kilbourn residence, Joel pushed defendant. Joel specifically testified that they "put [their] hands on each other." After this confrontation, defendant went into his bedroom for a short time, and then returned to the room with a 12-inch kitchen knife. According to Joel, defendant then began "cursing" at him and "lunged" at him with the knife several times, making contact with him once. The knife was recovered by the police after they arrived. The testimony of a single witness, if positive and credible, is sufficient to convict, even if contradicted by defendant.

*People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Here, Santiago and Joel both testified that defendant retrieved a knife from his bedroom, with Joel describing defendant's actions as "lunging." Joel testified that defendant's actions caused injury to him. Accordingly, Santiago and Joel's testimonies regarding the incident were sufficient to convict defendant.

¶ 26 Defendant nevertheless argues that the State did not present sufficient evidence to convict him. He first argues that the court erred by rejecting his self-defense claim. He maintains that he acted in self-defense because Joel was the "aggressor" in the conflict where he pushed defendant to the ground and, as defendant testified, "lunged" at him and tried to choke him. Defendant argues that Joel's testimony was "much more inconsistent" than defendant's regarding the altercation, emphasizing the fact that Joel testified that the original altercation was a mutual pushing, but acknowledged that he was not sure of that fact.

¶ 27 The defendant's argument essentially requests that this court reweigh the trial evidence and find defendant's testimony regarding the incident more credible than Joel's. As the reviewing court, we cannot do so. The trier of fact, here the trial judge, is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences therefrom. *Brown*, 2013 IL 114196, ¶ 48. The court, in its ruling, noted that it believed Joel's testimony regarding the sequence of events, and did not believe defendant was in fear for his life or that Joel was the aggressor in such a way to justify defendant retrieving a knife. We will not substitute our judgment for that of the trier of fact regarding such credibility determinations. *Id.*

¶ 28 Further, Joel, Santiago, and defendant himself, all agreed that after the initial confrontation between Joel and defendant, defendant retreated into his bedroom and returned with a knife, which he brandished against Joel. Joel testified defendant "lung[ed]" at him

multiple times, eventually causing an injury. "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself *** against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2018). Self-defense includes the following elements (1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of force applied, and (6) the beliefs of the person were objectively reasonable. *People v. Gray*, 2017 IL 120958, ¶ 50. If the State negates any one of these elements, the defendant's self-defense claim fails. *Id.* The court, in ruling, noted that it did not believe that Joel attacked defendant once he had the knife. It also noted that it did not believe that defendant was in fear for his life. Taking the evidence in a light most favorable to the State, the evidence was sufficient to support the conclusion that defendant did not reasonably fear for his life such that the use of force was justified. Accordingly, we find the court did not err in rejecting his self-defense claim.

¶ 29    Next, defendant argues the State did not establish that he deliberately stabbed Joel. He maintains that he accidentally caused the injury after Joel attempted to take the knife from him. Our appellate districts disagree as to whether aggravated battery is a specific intent crime. *See People v. Slabon*, 2018 IL App (1st) 150149, ¶ 34 (describing appellate district split). Nevertheless, we need not address this issue, because the evidence presented at trial established that defendant had the requisite knowledge to commit aggravated battery. See *id.*

¶ 30    Knowledge is ordinarily proven by circumstantial evidence, rather than by direct proof, and the State must present sufficient facts from which an inference of knowledge is able to be

made. *Id.* A person acts knowingly where he is "consciously aware" of the nature of his conduct and that his conduct is practically certain to cause a particular result. 720 ILCS 5/4-5(a), (b) (West 2018). Again, the court credited Joel's version of the incident over defendant's version. Joel described defendant's actions as "lunging" the knife toward him multiple times. The evidence established that he repeatedly lunged at Joel's body with a 12-inch kitchen knife. We find a rational trier of fact could have found that defendant was consciously aware that his conduct was practically certain to result in injury to Joel. See *People v. Smith*, 124 Ill. App. 3d 243, 247-48 (1984) (in affirming the defendant's conviction for aggravated battery, this court found the defendant should have been "consciously aware" brandishing a knife and refusing to relinquish it to the victim had the natural and probable consequence of causing injury to the victim rather than finding it to be an accidental injury).

¶ 31    Defendant further argues that his conviction should be reversed because the court did not find that the knife which caused injury to Joel was a "deadly weapon." We disagree. A deadly weapon is an instrument that is "dangerous to life" and is capable of producing death or great bodily injury. *People v. Stanley*, 369 Ill. App. 3d 441, 445 (2006). "Some weapons are deadly *per se*; others, owing to the manner in which they are used, become deadly." *People v. Blanks*, 361 Ill. App. 3d 400, 411 (2005) (noting that some weapons, such as a gun, pistol, or "dirk-knife" are deadly *per se*, while small pocket knives, canes, riding whips, clubs or baseball bats may be so used as to be deadly weapons). It is a question for the factfinder to determine whether the weapon is deadly from a description of the weapon, the manner of its use, and the circumstances of the case. *Id.*

¶ 32    Here, contrary to defendant's argument, the court did not need to make a specific finding that the kitchen knife at issue was a deadly weapon. *People v. Curtis*, 296 Ill. App. 3d 991, 1000 (1998) (a trier of fact in a bench trial "is not required to mention everything—or, for that matter, anything—that contributed to its verdict."). If the record contains facts supporting the court's finding, we may consider those facts to affirm the finding, even if the trial court did not specifically state that it relied on them. *People v. Mandic*, 325 Ill. App. 3d 544, 546-47 (2001).

¶ 33    Since the exhibits were not included in the record on review, we are unable to review any photographic evidence of the knife or Joel's injury. The burden is on the defendant to provide a sufficiently complete record to support a claim of error. *Webster v. Hartman,* 195 Ill. 2d 426, 432 (2001); *People v. Resendiz*, 2020 IL App (1st) 180821, ¶ 35. Where the record on appeal is incomplete, any doubts arising from the incompleteness of the record will be construed against defendant. See *People v. Boston*, 2016 IL App (1st) 133497, ¶ 62. In this case, defendant testified he had taken the knife to his bedroom from the kitchen to eat an orange. Joel testified that the knife was 12 inches in total length. Further, Joel testified that he received an injury from the knife across his stomach which caused a scar. Accordingly, we find that the evidence that the kitchen knife was a deadly weapon is not so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt.". *Jackson*, 232 Ill. 2d at 281. The evidence was therefore sufficient to sustain defendant's conviction for aggravated battery with a deadly weapon.

¶ 34    Defendant next argues that his case should be remanded for a new sentencing hearing because the court based its sentence on convictions that were entered over ten years ago, the sentence was overly harsh given the severity of Joel's injury, and the sentence "appeared to be an

attempt to punish [defendant] for his past criminal history rather than the charge that was actually before the trial court."

¶ 35 First, the State argues that defendant has forfeited his sentencing arguments because he did not raise them in his written motion to reconsider sentence. However, sentencing issues raised for the first time on appeal may be reviewed under the plain error doctrine. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 11. While defendant did not raise the question of plain error review in his appellate brief, he did raise the issue in his reply brief. This is sufficient for us to review the issue for plain error. See *People v. Ramsey*, 239 Ill. 2d 342, 412 (2010).

¶ 36 In the sentencing context, a reviewing court may address a forfeited claim if a clear and obvious error occurred and either (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so serious that it deprived the defendant of a fair sentencing hearing. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). "When a defendant fails to establish plain error, the result is that the 'procedural default must be honored.' " *People v. Naylor*, 229 Ill. 2d 584, 593 (2008) (quoting *People v. Keene*, 169 Ill. 2d 1, 17 (1995)). The initial consideration in this analysis is whether a clear and obvious error occurred at all. *Hillier*, 237 Ill. 2d at 545. Although we find it appropriate to review defendant's plain error argument, we conclude the circuit court committed no error in sentencing him.

¶ 37 A trial court's sentencing decision is reviewed under the abuse of discretion standard. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court will be found to have abused its discretion where the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id*. (quoting *People v. Stacey*, 193 Ill.

2d 203, 210 (2000)). The trial court has broad discretion in imposing a sentence, and its sentencing decisions are afforded great deference, because the trial judge "observed the defendant and the proceedings," and is in a better position to weigh factors such as defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Id.* at 212-13. The reviewing court " 'must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Id.* at 213 (quoting *Stacey*, 193 Ill. 2d at 209).

¶ 38    A sentence that falls within the statutory range is presumed to be proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Here, defendant was convicted of one count of aggravated battery with a deadly weapon (720 ILCS 5/12-3.05(f)(1) (West 2018)), a Class 3 felony with a sentencing range of two to five years' imprisonment. 720 ILCS 5/12-3.05(h) (West 2018); 730 ILCS 5/5-4.5-40(a) (West 2018). The court also found defendant qualified for an extended term sentence, making the sentencing range for the offense five to ten years' imprisonment. 730 ILCS 5/5-4.5-40(a) (West 2018). Defendant's six-year sentence falls within these statutory guidelines and is, therefore, presumed to be proper. *Knox*, 2014 IL App. (1st) 120349, ¶ 46.

¶ 39    Despite the fact that his sentence fell within the appropriate sentencing range, defendant argues the trial court erred in imposing sentence in various ways. First, he argues the court "rested its reasoning on a faulty basis," because it imposed an extended sentence on the basis of his previous criminal convictions, where all but one of those prior convictions were entered over ten years ago.

¶ 40    Under Illinois law, a judge cannot sentence a defendant to an extended term of imprisonment unless certain factors in aggravation are found to be present. 730 ILCS 5/5-8-2

(West 2018). These factors include, *inter alia*, where a defendant has been convicted of "the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction." 730 ILCS 5/5-5-3.2(b)(1) (West 2018). During sentencing, both parties agreed defendant was "extendable." Defendant's PSI and Illinois Department of Corrections records indicate he had been convicted of attempt burglary in 2018, a Class 3 felony.[3] Defendant, therefore, qualified for an extended term sentence, and the court did not err in imposing an extended term based on this prior conviction.

¶ 41    Defendant nevertheless speculates that the court considered all of his prior convictions in sentencing him to an extended term, arguing that the record was "wholly unclear" whether the court was entering an extended sentence based on the single conviction within the previous ten years, or his entire criminal record, given the court focused on his entire criminal history in pronouncing sentence. As discussed above, the court is presumed to follow the law, in the absence of affirmative evidence to the contrary. See *People v. Yancy*, 368 Ill. App. 3d, 381, 386 (2005). Here, because defendant was eligible for extended term sentence because of his 2018 conviction, the court is presumed to have followed the law in sentencing him to an extended term because of this conviction.

¶ 42    On this same point, defendant argues that the court sentenced him as a way of punishing him for his past criminal activity, where Joel received only a "slight injury." The decision to impose an extended-term sentence is within the court's discretion and will not be disturbed absent an abuse of discretion. *People v. Moss*, 275 Ill. App. 3d 748, 758 (1995). In this case,

---

[3] Defendant's Illinois Department of Corrections (IDOC) records indicate his attempt burglary conviction in 2018 was a Class 3 felony, the same class as his aggravated battery charge. We may take judicial notice of IDOC records because they are public documents. See *People v. Peterson*, 372 Ill. App. 3d 1010, 1019 (2007).

defendant had 11 prior criminal convictions, including 8 convictions for felonies. The court found the facts of the case "somewhat" mitigating, but noted that based on his background and age, defendant had "chance after chance" regarding his drug addiction. It found the imposition of an extended-term sentence, with a sentence one year above the minimum for the extended term, to be appropriate. Criminal history alone may warrant a sentence substantially above the minimum. See *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 13. We do not find the court abused its discretion in considering defendant's prior criminal history in sentencing defendant. See *id.*

¶ 43    Lastly, defendant contends that he was "deprived of a meaningful opportunity" to consider the State's plea offer, because the court failed to inform him that he faced the possibility of an extended term sentence. A criminal defendant has the constitutional right to be reasonably informed of the direct consequences of accepting or rejecting a plea offer. *People v. Curry*, 178 Ill. 2d 509, 528 (1997). Here, defendant did not plead guilty and has stated no facts indicating that he was unaware of the possibility of an extended term. Defendant also has not made a claim of ineffective assistance of counsel regarding counsel's failure to inform him about the possibility of an extended-term sentence, instead arguing trial court error. While defense counsel is under an obligation to inform his client about the maximum and minimum sentences that can be imposed for the offense for which defendant is charged, the trial court is under no such duty if the defendant does not plead guilty. See *People v. Harvey*, 366 Ill. App 3d 910, 918 (2006) (discussing trial court requirements under *Curry* and Illinois Supreme Court Rule 402). Accordingly, we find no error in the court's admonishments to defendant when he rejected the plea offer.

¶ 44    In sum, we conclude that the trial court did not err in imposing sentence. Having found no error, there can be no plain error. See *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 45    We affirm the judgment of the circuit court of Cook County.

¶ 46    Affirmed.